Harold Gordon, Appellant *v.* Civil Service Commission, Appellee.

Submitted on briefs June 7, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Alfonso Tumini,* for appellant.

*Jill A. Douthett,* Deputy City Solicitor, with her *Alan J. Davis,* City Solicitor, and *Linda S. Sonnenberg,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE CRAIG, July 16, 1982:

Harold Gordon appeals from an order of the Court of Common Pleas of Philadelphia, affirming the Philadelphia Civil Service Commission's determination that his conduct on October 14, 1979 constituted just cause for dismissal from the Philadelphia police force.

In the notice of intention to dismiss, the police commissioner charged the following:

CONDUCT UNBECOMING AN OFFICER: On Sunday, 10-14-79 between 6:00 p.m. and 6:30 p.m., you went to 5729 Beechwood Street, the residence of your former wife (divorce final September, 1979) Adele Gordon, without notice and then fought with her and hit her in the face knocking her down, while brandishing your service revolver.

During the same altercation described in the above, you struggled with Mr. George Isaac, and shot at him in an apparent attempt to kill him.

. . . .

INTOXICATION: . . . your actions at 6:30 p.m., combined with the .06% score at 11:53 p.m. indicates you were intoxicated at 6:30 p.m.

DISOBEDIENCE OF ORDERS: During an altercation on 10-14-79 with Mr. George Isaac, you shot at him in an apparent attempt to kill him.

The appellant contends that the commission's adjudication was based solely on hearsay evidence, and was therefore not supported by substantial, competent evidence.

The commission, summarizing the evidence, concluded:

In our judgment the testimony of the police officers who came to the scene as a result of a police radio call[1] establish that an incident had just occurred between appellant, his ex-wife and

---

[1] The Civil Service Commission summarized the testimony as follows:

Mr. Isaac. Moreover, it was determined appellant had fired his .38 caliber pistol in the back bedroom of the house. The uncontroverted physical evidence, namely, the spent blank shell casings, the photographs taken at the scene immediately after the arrival by the police and the testimony of the firearms expert linking the shells to appellant's gun, demonstrate appellant's conduct.

.  .  .  .  .

In our judgment, this testimony, plus the physical evidence, constitutes just cause for dismissal.

Neither Harold Gordon, his ex-wife, nor Mr. Isaac testified before the commission. The city did submit,

---

Officer Samuel Schoell testified that on 10/14/79 at approximately 6:30 p.m., he was on patrol and, as a result of a radio call, proceeded to 5729 Beechwood Street. When he arrived, he observed appellant in the dining room and the appellant's ex-wife standing to the right of the door and Mr. George Isaac standing inside about six feet, near a stairway. The officer testified Mrs. Gordon stated something to the effect that appellant was shooting inside the premises and Mr. Isaac handed him appellant's revolver which he observed was without bullets.

Officer Joseph Sass testified that he also arrived at the premises and there was a discussion about someone having fired shots and that he went into the back bedroom and observed four or five live rounds and one spent shell.

Officer Lyles Sprague of the Mobile Crime Unit testified that he took photographs of the scene which showed various holes in the wall. Mr. Anthony Paul of the Firearms Investigation Unit testified that the shells received from Officer Schoell came from appellant's .38 caliber pistol.

Detective John Kelly testified that he investigated the incident at approximately 8:00 p.m. on the night in question and found a broken spindle of a banister in the hallway. He gave corroborating testimony and identified the photographs earlier referred to.

as an exhibit, a statement by Mr. Isaac taken by an investigating·officer, in which Mr. Isaac claimed that the gun discharged while he and the appellant were struggling in the stairway, although the gun was in the appellant's right hand.[2]

The trial court concluded that the hearsay statements made by the witnesses at the hearing, along with the physical evidence admitted as exhibits, possessed "indicia of reliability sufficient to provide them prima facie circumstantial guarantees of trustworthiness."

Consistent with *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976),[3] the rule continues to be that findings of fact based solely on uncorroborated hearsay cannot stand. *LeGare v. Unemployment Compensation Board of Review*, Pa. , A.2d (410 January Term, 1979, filed May 3, 1982).

Our review of the record indicates that, in making its findings as to what had occurred, the commission

---

[2] Mr. Isaac's statement also indicated that Adele Gordon tried to grab the appellant from the back while he and Mr. Isaac were struggling on the stairs; that Mr. Isaac finally got the gun from the appellant and ran to the back bedroom, opened the gun and removed the bullets; that the appellant came into the room and asked for the gun back, but that Mr. Isaac would not return it; that Mr. Isaac observed the appellant grabbing his ex-wife by the neck after she told him that the police were coming; and that Mr. Isaac pulled them apart and gave the gun to the police officers when they arrived.

[3] The trial court relied on *Unemployment Compensation Board of Review v. Ceja*, 493 Pa. 588, 427 A.2d 631 (1981) in assessing the evidence which supported the commission's determination. Although a plurality opinion by Justice KAUFFMAN in *Ceja* considered revision of the *Walker* doctrine, the majority in *LeGare v. Unemployment Compensation Board of Review*, Pa. , A.2d (No. 410 January Term, 1979, filed May 3, 1982) recently stated that "the opinion of Justice KAUFFMAN in Ceja was not joined by any other member of this Court; thus, that opinion is of no precedential value whatsoever—it merely announced the Court's result."

relied on hearsay testimony, together with the physical evidence involving bullets and shells, which has probative value so questionable—particularly as to time element—that we cannot regard it as corroborative.[4] Although we cannot interfere with the factfinder's function as arbiter of credibility, *In re Appeal of Corropolese,* 55 Pa. Commonwealth Ct. 55, 423 A.2d 28 (1980), we cannot hold as a matter of law that the hearsay, even linked with the firearms evidence, was "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion reached." *Bureau of Employment Security v. Schreider,* 24 Pa. Commonwealth Ct. 297, 298-99, 355 A.2d 838, 840 (1976).

Therefore, we must reverse as to the unbecoming conduct and disobedience charges and remand to the commission solely to consider whether substantial evidence exists, independently of the hearsay evidence previously considered, to support the remaining charge of intoxication.

---

[4] One witness for the city testified that the ballistics tests did not prove when, how, or under what circumstances the gun was fired:

Q. (Attorney) And can you from your test indicate whether or not the projectile was from that casing which was fired from that gun?

A. (City's witness) Yes, sir, it was. A microscopic comparative examination was conducted of the evidence submitted projectile, being a .38 caliber, and it was shown that the projectile was fired from the subject revolver again.

Q. Okay. Now, from your test did you—could you—could it be indicated or did you—did you learn when the projectile was fired from that firearm?

A. Unfortunately, there's no scientific test to determine when the firearm was discharged or when the projectile was discharged.

Q. So—

A. Science can tell us within thousands of years when it was fired but, unfortunately, not within days or moments.

472

ORDER

Now, July 16, 1982, the order of the Court of Common Pleas of Philadelphia, dated July 22, 1981, No. 2707 November Term, 1980, is reversed as to the unbecoming conduct and disobedience charges, and the case is remanded to the Philadelphia Civil Service Commission in accordance with this opinion.