Clarence Schmidt, Appellant *v.* Borough of Baldwin, Appellee.

Argued March 16, 1984, before Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

*Robert J. Donahoe,* with him, *William F. Manifesto, Manifesto & Doherty, P.C.,* for appellant.

*John R. Luke, Luke & Anthony,* for appellee.

OPINION BY JUDGE PALLADINO, May 30, 1984:

Clarence Schmidt, Appellant, appeals from a decision of the Court of Common Pleas of Allegheny County which affirmed the decision of the Civil Service Commission of the Borough of Baldwin (Commission).

Schmidt, a twenty-eight year veteran of Baldwin Borough's police force, was suspended by the Mayor of Baldwin pursuant to Section 1124 of the Borough Code (Code).[1] Of the violations listed in Section 1190[2] of the Code the Mayor selected the following which he set forth in his suspension letter:

(2) Neglect or violation of any official duty.

(3) Violation of any law which provided that such violation constitutes a misdemeanor or felony.

(4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

(5) Intoxication while on duty.

The Borough Council discharged Appellant at its next meeting following the suspension. Appellant ap-

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46124.

[2] 53 P.S. §46190.

pealed to the Civil Service Commission which conducted hearings on July 14, and July 15, 1982. The Commission vacated the Appellant's discharge and imposed a one year suspension in its place. Following an appeal by both parties to the Court of Common Pleas of Allegheny County, the Court affirmed the decision of the Commission without modification. Both parties now appeal from that decision.[3] We affirm the decision of the Court of Common Pleas of Allegheny County.

## FACTUAL HISTORY

Appellant was on duty on February 15, 1982, when he was told, via radio, to investigate a possible burglary at a service center in Baldwin Borough. Appellant, having found no sign of a break-in, radioed in his findings. Shortly after the Appellant's report, other officers arrived at the service center and discovered a 20″ x 30″ hole in the rear of the building. Later that night one of Appellant's supervisors discovered a sledgehammer in Appellant's patrol car and asked where it came from. Appellant denied any knowledge of the hammer even though evidence was later adduced which showed that Appellant found the hammer in the vicinity of the service center which was burglarized and placed it in his car, but did not recognize any connection between the burglary and the sledgehammer found. (The Allegheny County Crime Laboratory subsequently concluded that the sledgehammer was in fact used in the burglary of the service center.)

---

[3] Although the appeals were not formally consolidated, oral arguments were heard together and the same set of operative facts govern both appeals. The same issues having been dealt with in the instant case, the decision of the Court in the cross-appeal (No. 892 C.D. 1983) filed this same day, rests upon the reasoning contained herein.

Appellant also allegedly failed to maintain radio contact with the station after leaving the service center and refused to discuss the sledgehammer incident with the Chief of Police. Finally, there were various allegations of intoxication while on duty.

### Discussion

The decision rendered by a civil service commission must be upheld unless there has been a violation of constitutional rights, an error of law, noncompliance with the Local Agency Law, or if any factual finding made by the commission necessary to support its decision is not supported by substantial evidence. *Civil Service Commission of Philadelphia v. Saladino,* 47 Pa. Commonwealth Ct. 249, 252, 408 A.2d 178, 180 (1979).

Appellant argues that he was denied adequate notice of the charges against him; the facts indicate otherwise. The Mayor suspended Appellant until the next meeting of the Borough Council, at which time the Council decided to dismiss Appellant. A notice of the decision and the charges filed against him were sent to Appellant two days later, which is well within the five day limit contained in the Code.[4]

I. Substantial Evidence

Next, Appellant contends that the Commission's findings, as adopted by the court below, are not supported by substantial evidence.

The Commission found Appellant guilty of neglect by reason of his failure to maintain complete radio contact with the station.[5] Appellant's own testimony supports this finding.[6]

---

[4] 53 P.S. §46190.

[5] 53 P.S. §46190(2).

[6] Reproduced record, p. 316a:

Q. Is there any reason why you didn't radio the dispatcher telling her that you would be out of the car?

The Commission also found Appellant guilty of neglect in his investigation of the service center burglary.[7] Substantial evidence supports the Commission's finding that it would be difficult for a trained police officer with twenty-eight years experience to completely miss a 20″ x 30″ hole in the back of a building when that officer is searching for signs of a break-in.

Finally, the Commission decided that Appellant disobeyed orders by withholding information concerning the sledgehammer.[8] Appellant has admitted that he withheld this information.

The Commission specifically refused to find that Appellant committed a misdemeanor or felony or that he was intoxicated while on duty. After an exhaustive review of the transcript of the hearing and the entire record, we find substantial evidence to support the Commission's findings of fact.

II. Due Process

Lastly, Appellant argues that he was denied due process of law. Asserting an allegation of bias, Appellant offers the following statement made by a Commission member as proof: "You may feel free—we already know what the end result of this is going to be anyway. We will continue on with the hearing."[9] Appellant has taken this statement out of context;[10]

---

Appellant:
> When I pulled up in front of the house, I was going to call in by phone. Because it was the time of the morning, you never stop at home. I don't think—I told them my ear was bothering me. I forgot to call in . . . I made a mistake by not calling in.

[7] 53 P.S. §46190(2).

[8] Id.

[9] Appellant's brief, p. 31.

[10] N.T. pp. 5a, 6a:

> Mr. Dee: I hope everybody involved here realizes we had cancelled almost four meetings for the hearing, et cetera.

the Commissioner was responding to a motion by Appellant's counsel for a postponement, which if granted, would have been either the fourth or fifth postponement of the hearing.[11]

Appellant attempts to bolster his allegation of prejudice by claiming that the Borough Solicitor also acted as prosecutor for the Commission. The court

Mr. Manifesto: Not pursuant to court order.

Mr. Dee: We had done this.

Mr. Manifesto: If I may respond, you are correct that there were, I believe, three or four postponements. The one at my request, the last one, was refused by the board. I went to court and secured an injunction. As the board may or may not be aware, there are constitutional matters; and I wanted an injunction as to those matters which have been disposed of, two separate matters, in front of a magistrate in one district and one in another district. Both were discharged as not being sufficient. There were compelling reasons.

I only ask at this point—because I have a motion—I ask that the board rule upon the motion. Then we can proceed.

Mr. Bradley: The commission refuses your request.

Mr. Manifesto: Fine.

Mr. Bradley: *You may feel free—we already know what the end result of this is going to be anyway. We will continue on with the hearing.* (Emphasis added.)

Mr. Manifesto: Fine.

Mr. Bradley: The commission, if I may add, the commission has suffered one of these clear down to the deadline when you canceled one hearing and Mr. Luke canceled one because of the unavailability of witnesses. And this commission has already tried one case with only two men, and we are not about to set with two again.

In all fairness to Officer Schmidt, we canceled one because one man was not available. All three of us are here now. We feel free that three people will give him a fair hearing.

11 The record fails to disclose exactly how many postponements occurred. *See* N.T., p. 5a.

below found that although the Borough Solicitor and the prosecutor at the hearing were the same person, his roles did not conflict. The prosecutor did not preside over the hearing; he made no rulings, nor did he offer legal advice to the Commission during the hearing. The Commission remained the sole fact finder and rendered its own decision based upon conclusions which it was at liberty to draw from the evidence presented. *See Donnon v. Downingtown Civil Service Commission*, 3 Pa. Commonwealth Ct. 366, 370, 283 A.2d 92, 94 (1971) (holding *contra* but for the reasons listed above). There was no evidence of any commingling of adjudicatory and prosecutorial functions.

Appellant objects to the admission of hearsay testimony during the hearing before the Commission. Inasmuch as substantial evidence was provided to support the Commission's findings exclusive of any hearsay admitted below, we need not address Appellant's objection.[12]

Next, Appellant decries the failure of the Commission to grant his request for a closed hearing under 53 P.S. §46191 which provides:

A stenographic record of all testimony taken at such hearing shall be filed with, and preserved by the Commission, which record shall be sealed and not available for public inspection in the event the charges are dismissed.

A simple reading of the statute refutes Appellant's claim. The charges were not dismissed, obviating any reliance which Appellant attempts to place on the section. The decision of the Commission to conduct an open hearing must stand absent a showing of an abuse of discretion.

---

[12] With further reference to hearsay evidence at administrative proceedings, *see Gordon v. Civil Service Commission*, 67 Pa. Commonwealth Ct. 467, 470, n.3, 447 A.2d 713, 715, n.3 (1982).

Accordingly, we affirm the decision of the Court of Common Pleas of Allegheny County.

ORDER

AND Now, May 30, 1984, the decision of the Court of Common Pleas of Allegheny County in the above-captioned case is hereby affirmed.