Chinh HUYNH, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (HATFIELD QUALITY MEATS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 2007.

Decided May 22, 2007.

---

Thomas J. O'Brien, Philadelphia, for petitioner.

Katherine M. Mezzanotte, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Chinh Huynh (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), reversing an order of the Workers' Compensation Judge (WCJ), granting Claimant's reinstatement petition. We now affirm.

Claimant had been employed by Hatfield Quality Meats (Employer) in its sanitation department. In the course and scope of his employment on April 7, 1997, Claimant sustained head and rib injuries as a result of an eight-foot fall from a ladder. Claimant's head and the right side of his body struck metal containers on the floor around the ladder. Claimant thereafter received emergency treatment at a local hospital. Claimant attempted to return to modified work but was unable to perform the same. Although Employer immediately began payments of workers' compensation benefits to Claimant, it appears that Employer did not immediately file a notice of compensation payable.

On January 14, 1998, Employer filed a utilization review request challenging the reasonableness and necessity of the chiropractic treatment Claimant received from Dr. Douglas Ziegler, from November of 1997 and continuing. A utilization review organization apparently ruled in Employer's favor as, on April 13, 1998, Claimant filed a petition for review of the utilization review determination. Shortly thereafter, Claimant also filed a claim petition alleging that he sustained a loss of hearing in his right ear as a result of his work-related accident. Employer subsequently filed a termination petition alleging that as of May 7, 1998, Claimant had fully recovered from his injuries and was capable of returning to work with no loss of earning power. The petitions were consolidated and assigned to the WCJ for purposes of hearing and disposition.

As this litigation was pending, on October 21, 1998, Employer issued a notice of compensation payable (NCP) describing Claimant's work-related injuries as "CONTUSION TO HEAD AND RIBS." (R.R. at 44a). Despite repeated requests from the WCJ, neither party submitted a copy of this NCP into evidence. Rather, at the hearings before the WCJ, the parties merely referenced a 1997 NCP which, again, neither party presented into evidence. At these hearings, Claimant testified on his own behalf and also presented the testimony of Dr. Azar, an anesthesiologist. Additionally, Claimant presented voluminous medical records from Dr. Ziegler.

In opposition to Claimant's petitions and in support of its termination petition, Employer presented the testimony of Claimant's supervisor, Neil Welby, Michael Metzger, a field investigator hired to conduct video surveillance of Claimant and Dr. Robert Mauthe, who was Board-certified in physical medicine, rehabilitation and electordiagnostic medicine. Employer also presented the report of Dr. Jeff Behrend, a chiropractor. After finding that Claimant had offered no competent, credible medical evidence establishing that he sustained a loss of hearing as a result of his accident at work, the WCJ issued a decision and order denying and dismissing Claimant's claim petition. After rejecting the testimony of Claimant and Dr. Azar as not credible and accepting the testimony of Dr. Mauthe as credible and persuasive, the WCJ further denied and dismissed Claimant's petition for review of the utilization review determination but granted Employer's termination petition. This decision and order of the WCJ was circulated on January 31, 2001.

On or about April 16, 2001, approximately three months after the circulation date of the WCJ's decision and order, Claimant filed a *pro se* petition which included a check mark in front of each of the petitions types noted on the front of this petition form.[1] Employer filed an answer denying Claimant's petition. This petition was assigned to the WCJ who later determined the Claimant intended this petition to actually serve as a petition to review/reinstate his workers' compensation benefits.

Nevertheless, as this petition remained pending before the WCJ, on November 14, 2002, approximately twenty-one months after circulation of the WCJ's decision granting Employer's termination petition, Claimant filed a *nunc pro tunc* appeal of that decision with the Board. Claimant had obtained counsel as of this time. Employer filed a motion to quash Claimant's appeal as untimely. The WCJ then deferred the proceedings relating to Claimant's review/reinstatement petition pending the Board's decision regarding the appeal. By opinion and order dated June 25, 2004, the Board granted Employer's motion and quashed Claimant's nunc pro tunc appeal as untimely.[2] The WCJ

---

1. Claimant had placed a check next to each of the ten different petition choices included on this form, including review of medical treatment/billing, termination, termination based on physician's affidavit, modification, suspension, review compensation benefits, review compensation benefit offset, reinstate compensation benefits, set aside of a final receipt and approval of a compromise and release agreement.

2. Citing Section 423 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 853, the Board noted that an appeal of the WCJ's decision must be filed within twenty days of service of that decision. In addition, the Board noted Claimant's lack of evidence regarding any fraud, deception, coercion or distress that prevented him from filing a timely appeal. As to Claimant's petition filed on April 16, 2001, the Board noted that even if it

thereafter continued with the proceedings relating to Claimant's review/reinstatement petition.

At a hearing on May 12, 2005, relating to this petition, Claimant withdrew his review petition wherein he sought to expand the description of his injury. Claimant also attempted to clarify that the basis of his reinstatement petition was errors relating to the WCJ's prior decision circulated on January 31, 2001. More specifically, Claimant explained that the termination petition and the testimony of Dr. Mauthe presented by Employer with respect to that petition did not address Claimant's head injury as recognized by the NCP. In essence, counsel for Claimant acknowledged that Claimant was seeking a reinstatement of benefits relating to disability for his head injury, from which full recovery was never established by Employer nor recognized by the WCJ with respect to the prior termination petition.

During the course of the hearings, other than the original NCP, a check stub from Employer's workers' compensation insurance carrier reflecting that Employer immediately began payment of workers' compensation benefits and four evaluation forms completed by Employer's occupational health services, Claimant presented no new evidence or testimony in support of his remaining reinstatement petition. Instead, Claimant submitted the deposition testimony of Dr. Mauthe and Mr. Welby, as well as the report of Dr. Behrend, which was previously submitted in relation to Employer's earlier termination petition. Employer did not present any additional testimony or evidence, other than submitting the prior deposition testimony of Dr. Azar. At the last hearing held on this matter on December 8, 2005, Claimant's

counsel advised the WCJ that Claimant had returned to work with a different employer at no loss of wages as of April or May of 2004.

Ultimately, the WCJ issued a decision and order granting Claimant's reinstatement petition and directing Employer to reinstate Claimant's compensation benefits as of January 31, 2001, until the date of Claimant's return to work with no loss of earnings. In her decision, the WCJ incorporated the findings of fact and conclusions of law as set forth in her prior decision circulated on January 31, 2001. The WCJ then noted that, with the exception of the head contusion, all other issues pertaining to Claimant's original work injuries were barred by the doctrine of res judicata. More specifically, the WCJ indicated that she would only address whether Claimant was entitled to workers' compensation benefits after January 31, 2001, for an acknowledged work-related head contusion.

In this regard, the WCJ found that Employer failed to present any medical evidence through the testimony of Dr. Mauthe that he considered Claimant's work-related head contusion in the formation of his opinion that Claimant had fully recovered and was capable of returning to work with no loss of earning power. The WCJ also found that Employer had failed to present any evidence that work was available to Claimant with consideration of said head contusion. Based upon the NCP, the check stub reflecting that Claimant received workers' compensation benefits for acknowledged work injuries and the lack of any termination petition addressing the work-related head contusion, the WCJ concluded that Claimant had sus-

considered the same as an appeal, it was still untimely. The Board further rejected an argument from Claimant that his *nunc pro tunc* appeal should have been granted on the basis of after-discovered evidence.

tained his burden such that his benefits should be reinstated.

Employer appealed to the Board and the Board reversed the decision of the WCJ. The Board agreed with Employer that Claimant's reinstatement petition was simply an attempt to relitigate the WCJ's earlier decision circulated on January 31, 2001, which was not appealed in a timely fashion. The Board noted that a claimant is not prohibited from seeking a reinstatement of benefits following a termination. However, in such cases, the Board, citing *Pieper v. Workmen's Compensation Appeal Board (Ametek–Thermox Instruments Division)*, 526 Pa. 25, 584 A.2d 301(1990), indicated that a claimant must show an increase or recurrence in disability and a change in physical condition.

In the appeal before it, however, the Board indicated that the WCJ did not grant Claimant's reinstatement petition on the basis of an increase or recurrence in disability and a change in physical condition. Rather, the Board noted that the WCJ granted said petition on the basis that Employer did not seek nor did it obtain a termination of benefits relating to Claimant's head contusion. The Board held that in this regard, Claimant's reinstatement petition was barred by the doctrine of collateral estoppel. The Board further described the WCJ's rationale in granting the reinstatement petition as "untenable." (Board's Decision at 5). With respect to the WCJ's 2001 decision, the Board stressed that the granting of a termination petition was only possible if Employer had established that Claimant had fully recovered from all of his work-related injuries, thereby effectively terminating any benefits related to a head contusion injury.

Assuming that the WCJ erred in finding that Claimant had fully recovered in her 2001 decision, the Board provided that such error could only have been properly addressed by pursuing an appeal of that decision. The Board then noted its 2004 decision quashing such an appeal as untimely. The Board further noted that the evidence relied upon by Claimant with respect to the current reinstatement petition consisted mostly of the evidence previously submitted in the earlier litigation. The Board reiterated that Claimant presented no evidence sufficient to meet his burden for a reinstatement under *Pieper.* Claimant thereafter filed a petition for review with this Court.

On appeal,[3] Claimant argues that the Board erred as a matter of law in reversing the decision of the WCJ granting his reinstatement petition. More specifically, Claimant argues that neither the doctrine of collateral estoppel nor our Supreme Court's decision in *Pieper* apply in this case when the prior termination petition never addressed Claimant's recognized work injury in the nature of a head contusion. Claimant also argues that the WCJ's 2001 decision was a nullity since the WCJ lacked jurisdiction as a result of Employer's failure to file an NCP prior to the filing of its termination petition. Further, Claimant argues that the WCJ properly relied on said NCP in the present case, which actually estopped Employer from

**3.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. Further, in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), our Supreme Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

denying liability for his head contusion. We disagree with each of these arguments by Claimant in the context of the present reinstatement petition.

As noted above, our Supreme Court in *Pieper* specifically addressed the evidence required of a claimant seeking a reinstatement of benefits following a termination. In *Pieper*, the Court indicated that a claimant "must establish a causal connection between his current condition and the prior work-related injury in order to have benefits reinstated following a termination." *Pieper*, 526 Pa. at 32, 584 A.2d at 304. In order to establish this causal connection, the Court in *Pieper* held that a claimant "must produce evidence that his disability has increased or recurred after the date of the [termination], and that his physical condition has actually changed in some manner." *Id.*

■ As the Board noted in its opinion in this case, the WCJ did not base her decision granting Claimant's reinstatement petition based upon Claimant's presentation of evidence establishing an increase or recurrence of disability and a change in physical condition as required by *Pieper*. Rather, the WCJ reasoned in her opinion that the grant of said reinstatement petition was premised upon Employer's failure to seek or obtain a termination of benefits in the prior litigation with respect to Claimant's head contusion. In fact, Counsel for Claimant admitted during the course of the hearings before the WCJ that the present reinstatement petition was based upon errors relating to the WCJ's prior decision circulated on January 31, 2001. With the exception of a few exhibits, the only evidence/testimony presented by Claimant in support of his reinstatement petition was the evidence/testimony related to the prior termination petition, including the deposition testimony of Dr. Mauthe. We

agree with the Board that such evidence presented by Claimant was simply not sufficient to meet his burden under *Pieper*.

While we believe that the arguments presently raised by Claimant would have resulted in the reversal of the grant of Employer's termination petition on appeal, the fact remains that Claimant failed to timely file an appeal of that decision with the Board. As a result, the WCJ's findings and conclusions related to the termination petition became final and unassailable. *See* Section 418 of the Act, 77 P.S. § 833 (WCJ's findings of fact "shall be final, unless an appeal is taken as provided in this act"); *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa.Cmwlth.1997) (interpreting Section 418 of the Act such that a WCJ's decision, including the findings of fact, are unassailable unless a timely appeal is filed).

Moreover, in *Yonkers*, we noted that a judgment is final for purposes of res judicata and collateral estoppel unless and until it is reversed on appeal. The Board herein concluded that the doctrine of res judicata, which is composed of two distinct principles, technical res judicata and collateral estoppel, barred Claimant's reinstatement petition. We agree with the Board.

■ Technical res judicata precludes a future action between the same parties on the same cause of action when a final judgment on the merits already exists. *Henion v. Workers' Compensation Appeal Board (Firpo & Sons, Inc.)*, 776 A.2d 362 (Pa.Cmwlth.2001). Collateral estoppel, on the other hand, forecloses litigation in a later action of issues of law or fact that were actually litigated and necessary to a previous final judgment. *Id.* Additionally, in *Henion*, we noted that the doctrine of technical res judicata applies to claims that were actually litigated as well as those matters that should have been litigated.

*See also Maranc v. Workers' Compensation Appeal Board (Bienenfeld),* 751 A.2d 1196 (Pa.Cmwlth.2000).

As the Board properly pointed out in its opinion reversing the WCJ's grant of the reinstatement petition, the issue of whether Claimant was fully recovered from his 1997 work-related injuries was fully and finally adjudicated in Employer's favor in the WCJ's decision circulated on January 31, 2001. The doctrine of res judicata/collateral estoppel precludes Claimant from revisiting this issue in the form of her current reinstatement petition.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 22nd day of May, 2007, the order of the Workers' Compensation Appeal Board is hereby affirmed.