Enid IRIZARRY, Petitioner

v.

**OFFICE OF GENERAL COUNSEL, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 2007.
Decided Oct. 3, 2007.

Brian M. Puricelli, Newtown, for appellant.

Linda C. Barrett, Deputy General Counsel, Harrisburg, for appellee.

Andrew H. Cline, Deputy Chief Counsel and Andrew S. Gordon, Chief Counsel, Harrisburg, for intervenor, Department of Transportation.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge McGINLEY.

Enid Irizarry (Irizarry) appeals from a final order of the Commonwealth of Pennsylvania General Counsel (General Counsel) that denied Irizarry's application for payment of attorney's fees and costs (Application) pursuant to 4 Pa.Code, Chapter 39.[1]

The facts found by the General Counsel are as follows:

1. Irizarry is a former employee of the Commonwealth of Pennsylvania, Department of Driver Licensing (Department). (Official Notice; Application for Costs).

2. On or about August 3, 1998, while an employee of the Department, Irizarry issued a duplicate commercial driver's license to an applicant who was not the individual pictured on the original license. (Motion to Dismiss, Exhibit 1; Arbitrator's Final Award, p. 2).

3. As a result of Irizarry's action, a person by the name of William Nicastro obtained a duplicate license by using the picture and license number of another person, Christopher Brabazon (Brabazon). (Motion to Dismiss, ¶ 5; Irizarry's Response to Motion to Dismiss, p. 14).

4. In or around 1998, Irizarry filed suit against the Department and Department employees in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and the Pennsylvania Human Relations Act, 43 P.S. § 951, et. seq. (West 1991), in the United States District Court for the Eastern District of Pennsylvania (Civil Action,

---

1. The General Counsel also denied the Department of Transportation's (Department) motion to dismiss Irizarry's application.

No. 98–6180), alleging, *inter alia*, sexual harassment, a hostile work environment and retaliation. (Irizarry's Response to Motion to Dismiss, ¶ 5, p. 14, Exhibit 5).

5. The federal lawsuit involved allegations that Irizarry was wrongfully demoted as a supervisor. (Irizarry's Response to Motion to Dismiss, ¶ 5, p. 14, Exhibit 5).

6. While the federal lawsuit was pending, the Department discharged Irizarry effective September 17, 1999 for "failure to adhere to standard procedures and [her] inappropriate issuance of a duplicate driver's license to someone other than the licensee." (Irizarry's Response to Motion to Dismiss, ¶ 5, Exhibit 4).

7. Pursuant to a collective bargaining agreement between Irizarry's union and the Commonwealth, Irizarry subsequently submitted a grievance to challenge her employment termination on the basis that her discharge was not for "just cause" as required by Article 28, § 1 of the July 1, 2996 [Collective Bargaining] Agreement. (Department's Motion to Dismiss, Exhibit 1, p. 2).

8. Irizarry subsequently filed for unemployment compensation benefits. A referee initially denied benefits to Irizarry, but the Unemployment Compensation Board of Review reversed the referee's decision and granted benefits to Irizarry. (Irizarry's Response to Motion to Dismiss, Exhibit 1).

9. In an unreported Memorandum Opinion and Order dated August 25, 2000, the Commonwealth Court affirmed the decision of the Unemployment Compensation Board of Review to grant benefits to Irizarry holding that the Department failed to carry its burden of proving willful misconduct against Irizarry. (Application for Fees and Costs, Exhibit D, p. 5).

10. In or around may of 2000, Brabazon and his wife filed a civil suit against Irizarry and others in the Court of Common Pleas of Philadelphia (Application for Costs, ¶ 3, Exhibit A).

11. The complaint charges Irizarry with conspiracy to commit fraud and theft of identity and alleges, *inter alia*, that the actions of Irizarry "were done knowingly and intentionally, and constituted willful misconduct and abuse of her position." (Application for Costs, Exhibit A, ¶ 73).

12. On May 2, 2000, Irizarry, through counsel, provided notice to the Office of Attorney General under 42 Pa.C.S. § 8525 that service of a complaint had been made on Irizarry and requested that the Office of Attorney General defend Irizarry in the civil action. (Application for Costs, Exhibit B).

13. By letter dated May 5, 2000, the Office of Attorney General notified Irizarry's counsel that 42 Pa.C.S. § 8525 does not apply to Irizarry's claim and that representation of Commonwealth employees in cases not covered by 42 Pa.C.S. § 8525 is covered by regulations at 4 Pa.Code Chapter 39. (Application for Costs, Exhibit C).

14. Subsequently, on May 19, 2000, the Office of Attorney General notified Irizarry as follows:

You supplied the Pennsylvania Department of Transportation, your former employer, with a copy of the above lawsuit naming you as a Defendant and alleging conspiracy to commit fraud and theft of identity. These actions allegedly took place in 1998, while you were a PennDOT Driver License Examiner. PennDOT is not named as a Defendant in this lawsuit, and your actions are characterized as willful misconduct and abuse of your position, as well as knowing and intentional. These actions, in

fact, caused you to be removed on September 17, 1999 from your employment with PennDOT.

The Pennsylvania Department of Transportation conducted a review of the circumstances of this incident, in which you issued a duplicate driver's license with a changed address to someone you knew not to be the licensee. Based on this review, the Department, as well as the Pennsylvania Office of Attorney General and Office of General Counsel, have determined that you were not within the scope of your employment, because of your willful misconduct in knowingly issuing this license. Based on this determination, neither our Office nor Department counsel will be defending you on the matters alleged in this lawsuit. Further, the Commonwealth will not pay on your behalf any judgment which may ultimately be entered against you based on this Complaint.

(Application for Costs, Exhibit C).

15. On September 12, 2000, an arbitrator conducted a hearing on Irizarry's grievance. (Motion to Dismiss, Exhibit 1).

16. On November 8, 2000, following a hearing on Irizarry's grievance, the arbitrator found in favor of the Department and upheld Irizarry's discharge. (Department's Motion to Dismiss, Exhibit 1, pgs. 7–8).

17. In upholding the Department's discharge of Irizarry, the arbitrator concluded:

It is true that termination is not usually the penalty for a simple mistake for an employee with 16 years of service. But this record does not convincingly show that Grievant committed a simple mistake. Rather, it documents what can only be described as a serious if not a deliberate avoidance of prescribed policies and procedures and a reckless disregard of even the most fundamental safeguard in place to assure proper identity, that is, looking at and comparing the photo with the applicant. In addition, Grievant had no explanation for the discrepancies between her log and the computer system's record or the change in the system from the "I" to a "P" indicating no photo. The result was disastrous for a citizen whose identity was "stolen" in terms of his employment and credit.

. . .

I find that Grievant was derelict in her duties and failed, as charged, to follow prescribed policies and procedures of which she was well aware. This is a case where the Commonwealth has proven the elements of the infraction for which an employee was terminated. I find no mitigating circumstances that warrant or justify a reduction in the severity of the discipline from that imposed by the Commonwealth. (Motion to Dismiss, Exhibit 1, p. 7).

18. On May 22, 2001, the Office of Attorney General confirmed with Irizarry's counsel an agreement between the parties to settle Irizarry's federal lawsuit against the Department in the matter re: *Irizarry v. Commonwealth of Pennsylvania. (Civil Action No. 98–6180 ).* (Motion to Dismiss, Exhibit 2).

19. In pertinent part the letter reads:

As agreed, this is a global settlement in the sum of $60,000.00. This settlement covers all actions which have been brought or could be brought by Ms. Irizarry against PennDOT or any of its employees, assigns, etc., including but not limited to, any claims or causes of action which were or could have been set forth in *in extenso,* in the action in the United States District Court for the Eastern District of Pennsylvania, No. 98–6180, or which plaintiff ever had,

shall have or may have brought for any reason arising out of or directly related to the claims brought by plaintiff against the defendants in the above-captioned action.

It is understood by all parties that Action No. 00870, brought in the Court of Common Pleas of Philadelphia County is a separate action by private citizens (Christopher Brabazon and Mary Kaelin) against Ms. Irizarry and others, to which PennDot is not a party. This settlement does not affect claims and or defenses raised in that action. (Motion to Dismiss, Exhibit 2).

20. On May 31, 2001, Irizarry, through counsel, executed a Settlement Agreement and Full and Final Release of All Claims (hereinafter "Settlement Agreement"). Motion to Dismiss, Exhibit 3).

21. Under the terms of the Settlement Agreement, the Department agreed to pay Irizarry $60,000 "as a full, final, complete settlement of all claims by [Irizarry] against [the Department], including "any and all monetary damages, costs, and/or attorney's fees [Irizarry] sought or could have sought to recover in the [federal lawsuit filed by Irizarry against the Department] or otherwise, pursuant to any federal or state statute or rule of court." (Motion to Dismiss, Exhibit 3).

22. In consideration of the Department's agreement to pay Irizarry $60,000, Irizarry agreed to:

Remise, release and forever discharge the Commonwealth of Pennsylvania, PennDOT, the individual defendants, their predecessors, successors, agents, supervisors, employees, administrators, heirs, and assigns, of and from all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity *arising out of her employment and the termination of her employment with PennDot or could have been set forth in the action in the United States District Court for the Eastern District of Pennsylvania, No. 98–6180, or which she ever had, nor has,* or which her heirs, executors, administrators, successors, or assigns, or any of them, hereafter can, shall or may have, *for or by reason of any cause, matter, or thing whatsoever arising out of or directly related to the claims brought by plaintiff against defendants in the above-captioned action, from the beginning of the world to the date of these presents.* (Motion to Dismiss, Exhibit 3).

23. The parties to the Settlement Agreement specifically agreed:

IT IS AGREED AND UNDERSTOOD by all parties that the action at No. 00870, April term 2000, brought in the Court of Common Pleas of Philadelphia County is a separate action brought by private citizens against plaintiff and others. It is understood that PennDot is not a party to that action and this settlement does not affect claims and/or defenses raised in that action. (Motion to Dismiss, Exhibit 3).

24. On June 7, 2006, the Court of Common Pleas of Philadelphia County entered an Order dated May 31, 2006 which dismissed the civil action against Irizarry and the other named defendants as a sanction based upon the Plaintiffs' failure to comply with discovery orders. (Application for Costs, Exhibit H).

25. On June 14, 2006, Irizarry submitted an application for attorneys' fees and costs under 4 Pa.Code, Chapter 39, to the Office of Attorney General. (Application for Costs).

26. On June 21, 2006, the Office of Attorney General forwarded Irizarry's

application for attorneys' fees and costs to the office of General Counsel for final disposition under 4 Pa.Code § 39.3(b)(2). (Official Notice).

27. On June 24, 2006, Barry N. Kramer, Deputy General Counsel, was designated by the General Counsel to serve as presiding officer under 1 Pa.Code, Part II, and to act as advisor to the General Counsel in preparing and issuing an adjudication in this matter. (Official Notice).

28. Mr. Kramer scheduled a pre-hearing telephonic conference with counsel which occurred on July 17, 2006. (Official Notice, record).

29. During the pre-hearing conference, the Department and Irizarry's counsel agreed to submit simultaneous briefs by September 29, 2006 to address the following issues: (1) who has the burden of proof in this proceeding; (2) whether an employee/defendant must prevail on the merits in a civil action in order to be entitled to reimbursement for attorney fees and costs under 4 Pa.Code, Chapter 39; (3) whether an earlier release agreement executed by Irizarry that released all claims against the Department is dispositive of Irizarry's request for payment of fees and costs in this matter; and (4) whether an arbitrator's decision that determined that Ms. Irizarry engaged in misconduct or an unemployment compensation decision that found no willful misconduct on the part of Ms. Irizarry is dispositive of whether or not Ms. Irizarry's conduct was a bad faith exercise or her authority, malicious or outside the scope of her employment for purposes of her application for attorneys' fees and costs. (Official Notice, record).

30. On August 10, 2006, prior to the deadline for the filing of simultaneous briefs, the Department filed a Motion to Dismiss Irizarry's application for attorneys' fees and costs. (Motion to Dismiss).

31. Irizarry filed a response to the Department's Motion to Dismiss on September 1, 2006 which incorporated argument on the issues raised during the conference call of July 17, 2006. (Irizarry's Response to Motion to Dismiss).

32. On September 29, 2006, the Department filed its brief in opposition to Irizarry's application for attorneys' fees and costs and in support of its Motion to Dismiss. On the same date, a letter brief was submitted on behalf of Irizarry which incorporated arguments made in Irizarry's reply to the Department's Motion to Dismiss. (Official Notice, record).

33. A Sur Response to the Department's brief was filed by Irizarry on October 9, 2006. (Official Notice, record).

34. On October 10, 2006 a second conference call was held with counsel to determine the need, if any, to schedule this matter for hearing. (Official Notice, record).

35. During the October 10, 2006 conference call, it was agreed that this matter would be submitted to the General Counsel based upon the briefs and supporting documentation provided by counsel in support of their respective positions. (Official Notice, record).

36. Following the conference call, the Department requested the opportunity to prepare a short reply to Irizarry's Sur Response. (Official Notice, record).

37. The Department's response was received on October 17, 2006. (Official Notice, record).

Adjudication and Order of the General Counsel (Adjudication), December 1, 2006, Findings of Fact Nos. 1–37 at 5–12.

Before the General Counsel Irizarry contended that the arbitration award and settlement agreement were procured by fraud. The Department argued that the arbitration and settlement agreement barred Irizarry's claim. The General Counsel entered an order on December 1, 2006, which denied Irizarry's Application and denied the Department's motion to dismiss. The General Counsel concluded that Irizarry's dismissal for misconduct coupled with the arbitrator's award that upheld the dismissal warranted a denial of the Application. The General Counsel also concluded that Irizarry could not collaterally attack the validity of the arbitration award or settlement agreement on the basis of fraud. Thereafter, Irizarry petitioned for this Court's review.[2]

Irizarry contends that: 1) the General Counsel's Adjudication is void as a matter of law because an evidentiary hearing was not conducted and 2) the doctrine of collateral estoppel did not foreclose the General Counsel from holding a hearing on Irizarry's Application because the issues in the prior litigation were not identical and because Irizarry was not denied a full and fair opportunity to litigate the issues on the merits.

### Evidentiary Hearing

■ The Application at issue is governed by 4 Pa.Code § 39.3(b)(2) which provides:

If the General Counsel or the General Counsel's designee has determined initially that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment, and the defendant ultimately prevails in the civil action, the General Counsel, in his sole discretion, may de-termine that the Commonwealth will reimburse the defendant for the costs of defense and fees of his private attorney.

Irizarry contends that the General Counsel's Adjudication is invalid because she was not given an opportunity for a hearing as required by Section 504 of the Administrative Agency Law. Section 504 of the Administrative Agency Law provides: "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. 2 Pa.C.S. § 504. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings."

However, a hearing is not required in every case:

This Court has held that where no factual issues are in dispute, no evidentiary hearing is required under 2 Pa.C.S. § 504. Whether there are no disputed facts, the motion proceedings, including briefs and arguments by both parties, provide ample opportunity for the parties to be heard and the Administrative Agency Law requires no more.

*Independence Blue Cross v. Pennsylvania Insurance Department*, 802 A.2d 715, 720 (Pa.Cmwlth.2002) (citations omitted).

Irizarry contends that she was not provided the opportunity to present all relevant evidence in the arbitration proceedings. Irizarry seeks to introduce factual evidence to establish that the Department had knowledge of other Department employees who previously issued duplicate driver's licenses to Nicastro, but were not discharged from employment.

The problem with Irizarry's reasoning is that even assuming the truth of these

**2.** This Court's review is limited to a determination of whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

facts, they are immaterial to the dispositive facts in the case sub judice. The General Counsel relied on the findings of the arbitrator who found:

It is true that termination is not usually the penalty for a simple mistake for an employee with 16 years of service. But this record does not convincingly show that Grievant [Irizarry] committed a simple mistake. Rather, it documents what can only be described as a serious if not a deliberate avoidance of prescribed policies and procedures and a reckless disregard of even the most fundamental safeguard in place to assure proper identity, that is, looking at and comparing the photo with the applicant.

Final Award of the Arbitrator (Arbitrator's Decision), November 8, 2000, at 7; Reproduced Record (R.R.) at 84a. The fact that other Department employees may have committed the same conduct does not alter the undisputed fact that Irizarry committed more than a simple mistake when she engaged in "a deliberate avoidance of prescribed policies and procedures". The factual evidence Irizarry seeks to introduce might have been relevant regarding her degree of discipline, however it is not relevant to a determination whether she was entitled to reimbursement of costs. As stated *supra,* the General Counsel has the "sole discretion" to determine whether the Commonwealth will reimburse a defendant for costs where the General Counsel has initially determined "that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment". 4 Pa.Code § 39.3(b)(2). The General Counsel adopted the arbitrator's finding of misconduct and concluded that Irizarry's conduct was "a bad faith exercise of [her] authority, malicious or outside the scope of employment." As such, the General Counsel exercised her "sole discretion" to deny Irizarry's Application.

This Court agrees with General Counsel that an evidentiary hearing was not required.

### Collateral Estoppel

Irizarry next contends that "the labor arbitration award has no estoppel effect to preclude the General Counsel from holding a hearing and/or deciding whether Ms. Irizarry's actions were 'within the scope' of her employment with the Commonwealth". Irizarry's Brief at p. 14.

■ This Court was presented with a similar scenario in *Frog, Switch & Manufacturing Company v. Pennsylvania Human Relations Commission,* 885 A.2d 655 (Pa.Cmwlth.2005). An employee had filed a grievance under a collective bargaining agreement after he was discharged for insubordination. The employee had alleged that his discharge was retaliatory. The arbitrator concluded that discipline for insubordination was warranted, but discharge was excessive. Employee also filed a separate retaliation claim with the Pennsylvania Human Relations Commission (Commission). The Commission found that the discharge was retaliatory and awarded back pay. The employer appealed to this Court and alleged that the arbitrator's findings were conclusive and binding on the Commission. While this Court ultimately determined that collateral estoppel did not apply the Court's analysis is instructive:

The doctrine of collateral estoppel, or issue preclusion, applies where the following four prongs are met: (1) an issue of law or fact decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action or is in privity with a party to the prior

action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Rue v. K–Mart Corporation,* 552 Pa. 13, 713 A.2d 82 (1998). As our Supreme Court has explained:

If the parties to an action have had an opportunity to appear and be heard in a prior proceeding involving the same subject matter, all ***issues of fact*** which were actually adjudicated in the former action and essential to the judgment therein are concluded as between the parties ***even though the causes of action in the two proceedings are not identical.*** *Pilgrim Food Products Company v. Filler Products, Inc.,* 393 Pa. 418, 422, 143 A.2d 47, 49 (1958) (citations omitted)(emphasis added). *See also Schubach v. Silver,* 461 Pa. 366, 377, 336 A.2d 328, 334 (1975) (stating that 'for the doctrine of collateral estoppel to apply it must appear that the *fact or facts at issue* in both instances were identical; that these facts were essential to the first judgment and were actually litigated in the first cause.'); Restatement (Second) Judgments § 27 ('When *an issue of fact* or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, *whether on the same or a different claim.*' (Emphasis added).

Pennsylvania follows the predominant view among the states that unless the arbitral parties agreed otherwise, a judicially confirmed private arbitration award will have a collateral estoppel effect, even in favor of non-parties to the arbitration, if the arbitrator actually and necessarily decided the issue sought to be foreclosed and the party against whom estoppel is invoked had

full incentive and opportunity to litigate the matter. See *Dyer v. Travelers,* 392 Pa.Super. 202, 572 A.2d 762, 764 (1990); *Ottaviano v. Southeastern Pennsylvania Transportation Authority,* 239 Pa.Super. 363, 361 A.2d 810, 814 (1976); Restatement (Second) of Judgments § 84 (1982). This view is based on the general policy that the prohibition against relitigation of issues already decided causes no injustice when the party to be bound had a full and fair opportunity to litigate the issues to be foreclosed, and that 'final' and 'binding' arbitration necessarily implies the possibility of collateral estoppel, particularly when (as in California) the law gives judicially confirmed arbitration awards the force and effect of civil judgments. *Witkowski v. Welch,* 173 F.3d 192 (3rd Cir.1999) (arbitration award confirmed by federal district court is 'final judgment' on the merits under FAA which can have issue preclusive effect under Pennsylvania law.)

*Frog Switch,* 885 A.2d at 661.

The three prongs at issue before this Court to determine whether collateral estoppel or issue preclusion apply are whether an issue of law or fact decided in a prior action was identical to the one presented in a later action, whether the party against whom collateral estoppel is asserted was a party to the prior action or is in privity with a party to the prior action and whether the party against whom collateral estoppel was asserted had a full and fair opportunity to litigate the issue in the prior action. *Rue,* 552 Pa. at 17, 713 A.2d at 84.

Irizarry insists that the "identity of issues" element in the *Rue* test was not met. The issue in the labor arbitration was limited to whether the Department had good cause to fire Irizarry. The issue before the General Counsel was whether Irizar-

ry's conduct was "a bad faith exercise of [her] authority, malicious, or outside the scope [her] employment" so as to compel the General Counsel to exercise her sole discretion to deny reimbursement for costs. 4 Pa.Code § 39.3(b)(3). Irizarry is correct that there were two separate legal issues presented in the two proceedings. However, the material facts necessary to the disposition of both actions were identical, regardless of the legal principles involved. The facts found by the arbitrator were essential to the adjudication of the controversy before the General Counsel. Therefore, the first element of the *Rue* test was satisfied.

Irizarry next contends that the third element of the *Rue* test was not satisfied because she was not a party to the prior action, but merely a witness. This Court does not agree. While the arbitration action was nominally between the Department and the Union, Irizarry was in privity with the Union as the grievant in the action before the arbitrator. *Frog Switch,* 885 A.2d at 661–662. Therefore, the third element of the *Rue* test was satisfied.

As to the fourth and final element of the *Rue* test, Irizarry similarly contends that she was not able to fully litigate the labor arbitration because she was only a witness in the arbitration proceeding. In addition, Irizarry argues that the Department acted fraudulently by withholding information about other Department employees who

engaged in similar conduct. Irizarry contends that by withholding this information she was denied the opportunity to mitigate her conduct and consequently denied a full and fair hearing.

■ Contrary to Irizarry's assertion, the record reveals that Irizarry had more than a full and fair opportunity to present the factual issues necessary for a favorable determination before the arbitrator. Irizarry was assisted in the arbitration proceedings by two union representatives. Furthermore, Irizarry testified on her own behalf, offered mitigating circumstances[3], and did not deny the conduct which resulted in her discharge. Therefore, this Court concludes that Irizarry had a full and fair opportunity to litigate the issues before the arbitrator. Accordingly, the fourth element of the *Rue* test was satisfied.[4]

In sum, this Court concludes that all the elements of collateral estoppel were satisfied. As such, the General Counsel did not abuse her discretion when she gave effect to the arbitrator's factual findings.

The Adjudication of the General Counsel is affirmed.

Judge PELLEGRINI dissents.

***ORDER***

AND NOW, this 3rd day of October, 2007, Adjudication and Order of the Com-

---

3. At the hearing before the arbitrator Irizarry testified that she had to take a leave of absence from her employment to care for her mother who suffered from Alzheimer's. Ultimately Irizarry was forced to place her mother in a nursing home. Irizarry testified that all of this was very stressful, and may have contributed to her error. Arbitrator's Decision at 6; R.R. at 83a.

4. Although not directly challenged by Irizarry the second element of the *Rue* test was also satisfied. In this controversy, the arbitrator's award was a final judgment on the merits.

The arbitration occurred more than six years prior and while there was some conflict among the parties whether an appeal was taken from the arbitrator's decision there was no assertion that the arbitrator's award was vacated. Assuming arguendo that an appeal was pending, a judgment is final for purposes of res judicata and collateral estoppel unless and until it is reversed on appeal. *Huynh v. Workers' Compensation Appeal Board (Hatfield Quality Meats)*, 924 A.2d 717 (Pa.Cmwlth. 2007).

monwealth of Pennsylvania, Office of General Counsel is hereby affirmed.