Michael J. Fuller, Appellant *v.* Borough of Waynesburg and Waynesburg Borough Civil Service Commission, Appellees.

Argued October 10, 1985, before Judges MacPhail and Doyle, and Senior Judge Barbieri, sitting as a panel of three.

*Robert N. Clarke,* for appellant.

*Harry J. Cancelmi, Jr.,* for appellees.

Opinion by Judge Doyle, January 27, 1986:

Michael J. Fuller (Appellant) appeals from the order of the Court of Common Pleas of Greene County which affirmed the action of the Waynesburg Borough Civil Service Commission dismissing Appellant from his position as police officer.

Appellant's dismissal arose out of an incident in which his superior, Lieutenant Clark, overheard a con-

versation among Appellant, another officer, and a non-member of the police force. Clark believed that the conversation involved statements critical of the police department, in violation of a departmental regulation which stated:

> No member of the department shall criticize the department or any of its members to any person or agency.

For this reason he ordered both Appellant and the other officer to submit a written memorandum of that part of the conversation in which departmental matters were discussed. Appellant initially began to write such a memorandum, but shortly thereafter refused, tearing up the memorandum in front of Lieutenant Clark. Clark again ordered compliance and Appellant again refused. Appellant was discharged by the Borough Council for refusal to carry out a direct order. The dismissal was upheld by the Waynesburg Borough Civil Service Commission (Commission), and Appellant appealed. After a *de novo* hearing before the court of common pleas, that court affirmed the dismissal, and appeal to this Court followed.[1]

Appellant acknowledges that he disobeyed a direct order, but argues that he was justified because the regulation upon which the order was based constituted an infringement on his constitutional right of free speech.

The Pennsylvania Supreme Court recently dealt with the issue of First Amendment rights of public employees in *Sacks v. Department of Public Welfare,* 502 Pa. 201, 465 A.2d 981 (1983). There, the issue

---

[1] Where the court of common pleas takes additional evidence in an appeal from an order of a civil service commission, our scope of review is to determine whether or not the court abused its discretion or committed an error of law. *Bell v. Borough Council of the Borough of Conshohocken,* 33 Pa. Commonwealth Ct. 424, 381 A.2d 1345 (1978).

presented before the Court was whether a government employer could discipline its employees for public statements critical of the governmental agency for which they work. The Court in *Sacks* cited the United States Supreme Court cases of *Pickering v. Board of Education*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983) for the proposition that an employee's First Amendment rights are dependent upon the importance of the speech and the nature of the injury to the governmental agency. The court in *Sacks* held:

> As the public importance of the speech increases, the government's difficulty of justifying disciplinary action taken against the employee because of the speech will increase proportionately, and as the public importance of the speech decreases, the government's burden of showing injury before it may discipline an employee, for First Amendment purposes, will proportionately decrease. If the speech has no element of public importance, then the analysis will not apply, and the speech should be treated merely as an ordinary complaint about the work place.

502 Pa. at 217, 465 A.2d at 989.[2]

In the present case it is important to note that, unlike *Sacks*, the discipline resulting in Appellant's

---

[2] *Sacks* also noted the factors relevant in reviewing the propriety of discipline given to an employee for speaking out on a matter of public importance:

1. Whether, because of the speech, the government agency is prevented from efficiently carrying out its responsibilities;

2. Whether the speech impairs the employee's ability to carry out his own responsibilities;

3. Whether the speech interferes with essential and close working relationships;

4. The manner, time and place in which the speech occurs.

502 Pa. at 216, 465 A.2d at 988, *citing Connick*, 461 U.S. at 149-54.

discharge was not due to any violation of the regulation prohibiting public criticism, but was rather due to Appellant's disobedience of a direct order. We are not, therefore, called on to directly decide whether the violation of the police department's regulation would justify a discharge under these facts.[3] Clearly, the *Sacks* case supports the proposition that preventing public disclosure by employees of information critical of a governmental agency is at least a legitimate concern of a public employer, which, in certain circumstances, may even justify a discharge. For this reason we must conclude that the order, which merely requested information upon which to determine whether such a public disclosure had taken place, was not void. We must therefore reject Appellant's claim that he was justified in refusing to obey the direct order.

Appellant also argues that the regulation in question is void because it is overbroad. Appellant cites *Gasparinetti v. Kerr*, 568 F.2d 311 (3rd Cir. 1977), *cert. denied*, 436 U.S. 903 (1978), in which the Third Circuit Court of Appeals found too broad and unconstitutional a regulation which prohibited officers from publicly criticizing their superior officers and the orders of the police department. We do not believe, however, that this issue is before us under the facts of the present case. As stated earlier, Appellant was not disciplined for his violation of the regulation, but rather for his disobedience of a direct order. The question before us is not whether the department could prohibit public criticism by its employees, but whether the department could compel disclosure of an

---

[3] We note in passing, however, that the information requested by the department concerned discussion of the police department's internal operating procedures. Thus, it is doubtful that the speech involved has an element of public importance which would make the balancing analysis in *Sacks* applicable.

employee's conversation which it believed contained a discussion critical of the police department. Regardless of the existence or validity of the regulation in question, it is clear from the principles enunciated in *Sacks* that it was within the police department's powers to request a disclosure of such information, and that an order to disclose cannot therefore be considered invalid.[4]

Appellant's additional legal claims are based on various factual allegations concerning the incident which resulted in his discharge. Appellant claims that he was ordered to reveal the contents of the *entire* conversation, including that portion which was not concerned with police business, that he could not remember the conversation, and that the conversation involved only private discussion. These factual allegations have been resolved by the court of common pleas, which stated:

[F]rom a careful reading and evaluation of the testimony it is abundantly clear that during the course of the critical verbal exchanges between the partrolman and his superiors, the only information which was sought to be elicited and

___

[4] While we do not reach the issue of tyrannical overreaching, it is important to note that the regulation in question does not prohibit *all* criticism of the department, but instead goes on to state:

Section A.

In the event a member has a sound and legitimate reason to believe that an order or rule of the department is inconsistent or unjust, he retains the right to respectfully call such inconsistency or unjustness to the attention of the supervisor issuing it.

Thus, the regulation seeks to prevent only such criticism of the department which is made to the public rather than to the appropriate supervisory personnel. *Cf.*, *Muller v. Conlisk*, 429 F.2d 901, 904 (7th Cir. 1970), (police regulation overbroad because it prohibited *all* forms of criticism, and made no distinction between public and private conversation).

which was understood by the officer via the memorandum was that part of the conversation relating to the criticism of the department. And even finally when told to submit a memorandum stating that the conversation was private, even this was refused.

A review of the record reveals that there was substantial evidence upon which the court could base these findings of fact. We therefore accept them as established facts to which we are bound. *See Wesolek v. Shaler Township*, 72 Pa. Commonwealth Ct. 224, 455 A.2d 1297 (1983).

Appellant also argues that the facts concerning his disobedience of the direct order do not justify so harsh a discipline as discharge. Section 1190 of The Borough Code,[5] 53 P.S. §46190 states, in pertinent part:

> No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons:
>
> . . . .
>
> (4) Inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer.

The Borough had clear statutory authority for dismissing Appellant for disobedience of an order, and in view of such authority, the court's decision to affirm the Borough's action does not amount to an abuse of discretion.

Finally, Appellant argues that his due process rights were violated because the Chairman of the Civil Service Commission was a partner in the same firm as the Borough Solicitor. This argument is without

---

[5] Act of February 1, 1966, P.L. (1965) 1656, *as amended*.

merit because the record clearly indicates that the Borough Solicitor appointed special counsel, not associated with his law firm, to prosecute this case on behalf of the Borough. The Solicitor was not present at the Commission hearing, and was in no way involved in advising the Borough, or in prosecuting the charges in the present case. Thus, there is not even the appearance of bias to support a due process claim.

In addition, we are in agreement with the court of common pleas that even had there been bias, it would have been cured by the additional hearing and testimony taken by the trial court, which specifically stated that it made its findings and reached its conclusions "irrespective . . . of, and not in the slightest degree influenced by what was done by the Commission."[6]

For the foregoing reasons, we conclude that the Borough of Waynesburg properly discharged Appellant from his position. Accordingly, we affirm the order of the court of common pleas.

ORDER

Now, January 27, 1986, the order of the Court of Common Pleas of Greene County, No. 52 Misc. 1983, dated September 24, 1984, is hereby affirmed.

---

[6] The court of common pleas' *de novo* review of such matter is set forth in Section 1191 of The Borough Code, 53 P.S. §46191, which provides, in pertinent part:

All parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case there be determined as the court deems proper. . . . [T]he court of common pleas shall . . . proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence.

*See Merulli Appeal,* 70 Pa. Commonwealth Ct. 262, 453 A.2d 27 (1982).