**Thomas L. DAY, Jr., Appellant**

v.

**CIVIL SERVICE COMMISSION OF the BOROUGH OF CARLISLE and the Borough of Carlisle.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2008.

Decided May 19, 2008.

Joseph D. Buckley, Carlisle, for appellant.

Joel S. Barras, Philadelphia, for appellee, Civil Service Commission of the Borough of Carlisle.

Edward L. Schorpp, Carlisle, for appellee, Borough of Carlisle.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This appeal from an order of the Honorable Edgar B. Bayley of the Court of Common Pleas of Cumberland County (trial court) was previously before this Court in *Day v. Civil Service Commission of the Borough of Carlisle*, 887 A.2d 793 (Pa. Cmwlth.2005), where, having found a violation of the Sunshine Act (Sunshine Act), 65 Pa.C.S. §§ 701–716, we invalidated the termination of Thomas L. Day, Jr. (Day), a police officer in the Carlisle Police Department, by the Civil Service Commission of the Borough of Carlisle (Commission), and remanded to the trial court with a directive to remand the matter to the Commission with instructions to consider Day's appeal at an open meeting. The Commission and the Borough of Carlisle (Borough) filed a petition for allowance of appeal with our Supreme Court, which was granted in *Day v. Civil Service Commission of Borough of Carlisle*, 587 Pa. 733, 901 A.2d 500 (2006). The Pennsylvania Supreme Court subsequently reversed this Court's decision, finding that Day's Sunshine Act challenge was untimely according to the plain language of Section 713, and remanded the matter to this Court, to address Day's remaining claims. *Day v. Civil Service Commission of Borough of Carlisle*, 593 Pa. 448, 931 A.2d 646 (2007).

Our Supreme Court set forth the factual history underlying this appeal in its decision of September 26, 2007:

On January 3, 2002, appellee, a corporal with the Carlisle Police Department with fifteen years of service, attended a meeting for police supervisors conducted by Police Chief Stephen L. Margeson. Chief Margeson discussed the proper procedure to make a complaint against a fellow police officer and stated that any complaints made outside the proper channels would be considered conduct unbecoming an officer. In January of 2003, appellee violated this policy when, in front of two subordinates and a superior, he accused a detective of holding a gun to the head of the detective's girlfriend, falsifying time records, and taking money and drugs from an investigation. Appellee also accused Chief Margeson of knowingly covering up these incidents. Chief Margeson investigated these claims, found them to be unsubstantiated, and initiated discipline against appellee on April 24, 2003. Specifically, Chief Margeson told appellee, both verbally and in a letter, that he was filing charges against him and that any repetition of such conduct would result in termination.

Three days later, appellee attended a union meeting for the Carlisle Police Association. During the meeting, appellee requested financial support to defend against the pending discipline, but the request was tabled. After the meeting, some officers asked appellee the reasons for his pending discipline. Appellee repeated to three additional subordinate officers the allegations he had made earlier. He further accused a police lieutenant of deleting the lieutenant son's name [sic] from a police database. The conversation was later repeated to Chief Margeson, who after conducting an internal investigation, initiated disciplinary proceedings against appellee for this separate incident. As a result, appellee was dismissed by the Borough of Carlisle on May 8, 2003.

Appellee appealed his termination to the Commission. Before the start of the Commission's hearings, appellee submitted a written motion for a public hearing, but the request was denied following a vote of the Commission. On March 1, 2004, after conducting six closed hearings, the Commission upheld appellee's dismissal on grounds of dis-

obedience of orders and conduct unbecoming an officer.

*Id,* 593 Pa. at 451–2, 931 A.2d at 648.

The trial court, after a thorough discussion of each of the issues raised by Day in his appeal of the Commission's decision, concluded:

> [T]he Civil Service Commission weighed the credibility of all of the evidence and the testimony of witnesses. Day, not unexpectedly, disagrees with many of the findings of the Commission. These findings, however, are based on relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The findings of the Civil Service Commission show that Day, for whatever reasons, was not satisfied with decisions that had been made regarding several incidents involving other members of the Department. That led to his making allegations of wrongdoing to subordinate officers in the communications room that had been determined in other investigations to be baseless. He also made an allegation of a cover-up by the Borough police chief, when there had been none.
>
> Three days after being told he would be disciplined for this conduct, he, nevertheless, repeated to subordinate officers the baseless allegations he made in the communications room, and additionally implied that a Lieutenant had wrongfully deleted his son's name from the Metro system, another baseless allegation. The substantial evidence supports the findings of the Civil Service Commission

that Day failed to follow orders that any concerns about other officers in the Department be made up the chain of command, not to subordinates. The evidence also supports the finding of the Commission that Day's actions constituted conduct unbecoming an officer.

(Opinion of the trial court, February 11, 2005, pp. 26–27.)

 On remand, Day argues, *inter alia,* numerous violations of his constitutional rights, under both the federal and Pennsylvania Constitutions, by both the Borough and the Commission.[1] On May 4, 2004, while his appeal to this Court was pending, Day also commenced a lawsuit in the United States District Court for the Middle District of Pennsylvania, in which he raised similar issues; Day alleged that he was unlawfully terminated from employment due to statements he made about police misconduct and due to his union participation, in violation of the United States Constitution's First Amendment protection of expression and association, and also asserted violations of his procedural and substantive due process rights. On July 10, 2006, the Honorable Yvette Kane entered summary judgment in that action in favor of the Borough and other named parties.[2] In a lengthy, well-reasoned opinion, Judge Kane addressed, and dismissed each of Day's claims. We therefore take judicial notice of the federal proceeding, and hold that the doctrine of collateral estoppel, or issue preclusion, applies,[3] and precludes re-litigation of the

---

1. Our review of an adjudication of a municipal civil service commission is limited to determining whether constitutional rights have been violated, an error of law has been committed, or findings of fact necessary to support the adjudication are not supported by substantial evidence. *Lewis v. Civil Service Commission of Philadelphia,* 518 Pa. 170, 542 A.2d 519 (1988).

2. *Day v. Borough of Carlisle,* No. 1:04–cv–01040YK, 2006 WL 1892711 (M.D.Pa. July 10, 2006).

3. In Pennsylvania, collateral estoppel applies when: (1) an issue of law or fact decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted

federal constitutional issues already decided against Day by judgment of the U.S. District Court.[4] See *Roman v. Jury Selection Commission of Lebanon County*, 780 A.2d 805, 809 n. 3 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 567 Pa. 769, 790 A.2d 1021 (2001).

Day's claims, therefore, that his spoken criticisms were protected free speech, that he was deprived of freedom of association, and that he was deprived of both substantive and procedural due process under the United States Constitution are foreclosed by the doctrine of collateral estoppel.

■ Because Day argues, correctly, that the due process rights of Pennsylvania citizens are broader than those afforded by the U.S. Constitution, we address Day's arguments that (i) the Borough violated his procedural due process rights under the Pennsylvania Constitution by creating an appearance of bias when the Borough's solicitor suggested two names to the Commission to serve as the Commission's solicitor, and the Commission selected one of them, Joseph Rudolf; (ii) subsequent to the commencement of the hearings before the Commission, the Commission's solicitor informed Day of new charges which he was required to defend, and (iii) *ex parte* communications were conducted between the Borough and the Commission and its solicitor. Day relies upon *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), in arguing that prosecutorial and adjudicatory functions were commingled. In *Lyness*, our Supreme Court stated:

In determining what process is due Pennsylvania citizens, this Court has established a clear path when it comes to commingling prosecutorial and adjudicatory functions. There is a strong notion under Pennsylvania law that even an appearance of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen.

*Id.*, 529 Pa. at 542, 605 A.2d at 1207 (emphasis deleted).

Judge Kane correctly noted that *Lyness* was inapposite, given the fact that Day's case did not involve a situation wherein charges were initiated by an individual or multi-member entity that later acted as the ultimate fact finder against the charged individual. Judge Kane further opined:

In the case *sub judice*, Defendants proffer evidence that Attorney Rudolf was selected by the chair of the Civil Service Commission, Ben Francavilla, because of Rudolf's expertise with civil service rules and regulations ... [T]he record does not support the specter of bias that Plaintiff claims existed within the Commission's choice of advisory counsel or Attorney Rudolf's role during the hearings. Plaintiff points to no evidence, beyond bald allegations, demonstrating bias of the Commission or Attorney Rudolf, or improper *ex parte* communications concerning the substance of the case. Further, the transcript of the civil service hearing on record does not support a finding that Attorney Rudolf's

---

was a party to the prior action or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Irizarry v. Office of General Counsel*, 934 A.2d 143 (Pa. Cmwlth.2007).

4. Judge Kane's order has been appealed to the Third Circuit Court of Appeals. However, unless or until it is reversed on appeal, it is a final judgment purposes of collateral estoppel. *Yonkers v. Donora Borough*, 702 A.2d 618 (Pa.Cmwlth.1997). A pending appeal does not destroy the finality of judgment for purposes of collateral estoppel. *Id.*

participation in the hearing resulted in an unfair or impartial proceeding, or that Attorney Rudolf guided the Commission in reaching their decision. The Plaintiff adduces no evidence to rebut the presumption of impartiality given to the Commission members in their adjudication of Plaintiff's case.

*Day v. Borough of Carlisle,* 2006 WL 1892711 at \*10. (Footnote and citations omitted.) *Sub judice,* the trial court determined that the assignment of independent counsel to the Commission complied with the law and was not violative of Day's due process rights. In *Stone and Edwards Insurance Agency, Inc. v. Commonwealth Department of Insurance,* 538 Pa. 276, 648 A.2d 304 (1994), our Supreme Court clarified that:

> [T]he form of impermissible "appearance" of bias and partiality proscribed in *Lyness* must clearly be one that arises from an *actual* environment of commingled functions. Given the nature and constraints of our various governmental bodies, the question of due process reasonably involves an inquiry into the nature of the process *actually* provided.

*Id.,* 538 Pa. at 281–282, 648 A.2d at 307.

■ Upon review of the extensive record, we can find no evidence whatsoever of a commingling of functions *sub judice,* and not even an appearance of impropriety. The record reveals that no *ex parte* communications occurred. As to Day's claim that he did not receive adequate due process notice, we note with approval the trial court's detailed analysis of the manner in which notification was provided; the record is undisputed that Day's right to notice of the charges against him was adequately protected:

> The May 9, 2003 notice of dismissal made reference to Borough Council concurring in the charges outlined in the letter to Day from Chief Margeson dated May 6, 2003. That letter specifically sets forth not only the alleged facts of the incident after the meeting of the Carlisle Police Association on April 27, 2003, but also that Margeson advised Day in writing on April 24, 2003, that he was going to seek disciplinary action against him based on a letter written to Day that date. That April 24th letter sets forth the specific facts as to the incident in the latter part of January, 2003 in the communications room of the police department. When Day was given that letter on April 24th, Margeson also told him he was going to seek discipline based on the communications room incident as set forth in the letter. Accordingly, Day received written notice of the charges relating to the incident in the communications room that was presented to Borough Council. The notice was constitutionally sufficient, and the Civil Service Commission properly reviewed those charges in Day's appeal from his dismissal by Borough Council.

(Opinion of the trial court, pps. 11–12.)

■ Similarly, it is proper that we consider Day's argument that his inalienable right, under Article 1, Section 7 of Pennsylvania Constitution, to discuss his opinions has been impaired. The Pennsylvania Constitution recognizes broader free expression rights than does the federal constitution. *Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591 (2002). Notwithstanding this broader penumbra, Pennsylvania law allows an employer to implement a chain of command policy to regulate the time, manner, and place of expression. *See Bala v. Unemployment Compensation Board of Review,* 42 Pa.Cmwlth. 487, 400 A.2d 1359 (1979). We must remember that speech can also constitute conduct, and an employee's conduct, in the workplace, may be regulated by the employer.

*Fuller v. Borough of Waynesburg*, 94 Pa.Cmwlth. 361, 503 A.2d 1031 (1986), involved a factual scenario similar to the instant matter. In *Fuller*, Lieutenant Clark, of the Waynesburg Police Department, overheard a conversation between Fuller, another police officer, and a non-member of the police force. Lieutenant Clark found that the conversation involved statements critical of the police department and in direct contravention of departmental regulations, which stated:

No member of the department shall criticize the department or any of its members to any person or agency.

Fuller was ordered to submit a written memorandum detailing the part of the conversation in which departmental matters were discussed. Fuller began to write the memorandum, but subsequently changed his mind and tore up the memorandum in front of Lieutenant Clark, who again ordered compliance, and again Fuller refused. Disciplinary proceedings were commenced, resulting in Fuller's dismissal. This dismissal was upheld by the Waynesburg Civil Service Commission and the Court of Common Pleas of Greene County, following a *de novo* hearing.

In writing for a unanimous panel, Judge Doyle held that the police department's regulation, which prohibited criticism of the department made to the public rather than to the appropriate supervisory personnel, was not constitutionally overbroad. *Id.*, at 1033, n. 4.

The chain of command policy regulating procedures to follow when making complaints of improper conduct by fellow officers and superiors is necessary for the orderly and efficient operation of paramilitary organizations, such as the Carlisle Police Department.

▮ Day also maintains that because his termination is based upon statements made to union members immediately after a union meeting, he was terminated due to union activities in violation of his right, under the Pennsylvania Constitution, to freedom of association. But not a shred of evidence in the record supports a finding that he was dismissed due to his association with a union, nor that he was engaged in union activity at the time he made his comments.

Day objected to review by the Commission of eighteen pages of documents that the Borough inadvertently attached to an exhibit submitted at one of the Commission hearings; these pages were not properly before the Commission.[5] He argues

---

5. The trial court stated:

Seven of the pages of the subject documents contain internal memoranda of the Carlisle Police Department regarding its investigation of Detective Smith. Three pages contain material involving the internal investigation of the Department regarding the deletion of the name of Matthew Walters from a dispatch entry after a traffic stop by Patrolman Brewbaker. Two pages, with accompanying dispatch pages, involved an incident on December 9, 2002, reported by Lieutenant Walters to Chief Margeson. Lieutenant Walters set forth that Corporal Day investigated a complaint from a resident on West South Street regarding vehicle tracks in her yard ... Generally, the information pertaining to

the investigations of Detective Smith and the deletion of the name of Matthew Walters from the dispatch entry was properly admitted into evidence through other means at other times during the hearings before the Civil Service Commission. The circumstances in which Day reported the conduct of Sergeant Guido and Corporal Hograth to Lieutenant Walters regarding the incident on December 9, 2002, speak favorably of Day as Walters, his superior, concluded that Guido and Hograth had used poor judgment in the matter. Accordingly, we conclude that Day was not prejudiced by the Commission reviewing the eighteen pages erroneously attached to Exhibit B–7. He, therefore, is not entitled to relief.

*sub judice* that the members of the Commission were biased as a result, and should have granted his request for a new hearing before a new Commission. In the course of the hearing, and again in its adjudication, the Commission clearly confirmed its ability to remain impartial and unbiased. In the absence of any evidence whatsoever that Day was prejudiced by this information, we find that there was no bias. *City of Harrisburg v. Pickles,* 89 Pa.Cmwlth. 156, 492 A.2d 90 (1985).

The remainder of Day's arguments are, in essence, a request that we substitute our evaluations for those of the Commission. A thorough review of the record indicates that the Commission's factual findings are supported by substantial evidence. Where a full and complete record is made of the proceedings before a municipal civil service commission, a reviewing court must affirm the adjudication unless it violates constitutional rights, is not in accordance with the law, it violates the procedural provisions of the local agency law, or the commission's findings are not supported by substantial evidence. Section 754 of the Local Agency Law, 2 Pa. C.S. § 754; *Moorehead v. Civil Service Commission of Allegheny County,* 769 A.2d 1233 (Pa.Cmwlth.2001).

Having found the Commission's factual determinations to be supported by the evidence, and no legal error or violation of constitutional rights, the order of the Court of Common Pleas of Cumberland County is affirmed.

### ORDER

AND NOW, this 19th day of May 2008, the order of the Court of Common Pleas of Cumberland County is affirmed. The Bor-

(Opinion of the trial court, pp. 21–22.)

ough's request for the award of attorney's fees is denied.