# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| John Wybranowski, | : | |
| Appellant | : | |
| | : | No. 90 C.D. 2018 |
| v. | : | Argued: October 16, 2018 |
| | : | |
| North Strabane Township | : | |

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
         HONORABLE MICHAEL H. WOJCIK, Judge
         HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: November 9, 2018**

Before this Court is the appeal of John Wybranowski (Wybranowski) from an order of the Court of Common Pleas of Washington County[1] (trial court) dismissing Wybranowski's statutory appeal from a decision of the North Strabane Township (Township) Board of Supervisors (Board). The Board upheld a decision by the administrator of the Township's Police Pension Plan, Ordinance No. 345, effective January 1, 2012 (Plan), finding Wybranowski ineligible for disability pension benefits under the Plan. The trial court dismissed Wybranowski's appeal. Upon review, we affirm the trial court's order.

## I. Background

Wybranowski began employment as a part-time police officer for the Township in July 1992. He became a full-time officer in June 1994, and in 2007

---

[1] The Honorable Damon J. Faldowski presided.

became a detective. He also became a Certified Forensic Computer Examiner after passing the requisite examination.

In June 2014, the Township hired a new police chief. Either the same day or the next day,[2] Wybranowski began using his work computer to research knee injuries, including tears of the meniscus, along with their diagnosis and treatment. Reproduced Record (R.R.) at 343a-46a; see also Bd. Op., 9/27/16, at 5. Computer forensic evidence showed he visited knee injury websites on his work computer 29 times. R.R. at 345a. In his sworn testimony, Wybranowski denied the knee injury research. R.R. at 275a.

Between July and October 2014, at least three[3] occurrences involving Wybranowski led to disciplinary actions against him and also revealed a pattern of repeated dishonesty on his part.

First, Wybranowski refused to cooperate with the new chief's request for an audit by the Federal Bureau of Investigation (FBI) of a forensic recovery computer located in Wybranowski's office. Wybranowski was the only person with authorized access to that computer. Supplemental Reproduced Record (S.R.) at 10b-11b, 27b. However, he would not disclose the password when the chief

---

[2] Wybranowski began computer research of knee injuries on June 3, 2014. The record conflicts concerning whether the Township hired the new chief on June 2 or June 3, 2014.

[3] The Township also learned Wybranowski used his work computer to access pornographic websites unrelated to any work investigation. The Township included this among the bases for discharge. An arbitrator found it "de minimis," explaining the pornography access was not sufficient, standing alone, to merit termination, though it could support some lesser form of discipline. Supplemental Reproduced Record (S.R.) at 163b. The Township did not impose any separate discipline based on the pornography access.

requested it.  S.R. at 5b-8b, 29b-33b, 157b.  He persisted in refusing to divulge the password, even when access to information stored in the computer became urgent in connection with a pending local criminal prosecution.  Id.  He claimed he did not remember the password, although he used it at least 158 times.  S.R. at 28b, 32b.  The FBI eventually had to break into the computer, at which time it discovered the password was the same as the user name that automatically populated when the computer was turned on.  S.R. at 12b, 28b, 157b. Wybranowski never disclosed this simple means of finding the password.  See S.R. at 33b.

Second, the Township learned that Wybranowski gained unauthorized access to the Township's server, as well as to confidential personal information concerning a Township employee who was the subject of a non-criminal administrative investigation.  S.R. at 146b-52b.  Wybranowski reviewed, copied, and stored confidential personal information concerning the subject of the investigation in both his work computer and the forensic recovery computer, all without any authorization, either express or implied.  Id.  The Township also discovered Wybranowski stored information from the Township's server onto a storage device used with Mac computers, although the Township had no Mac computers.  S.R. at 151b.

Third, examination of emails in Wybranowski's work computer revealed evidence that he cheated on his examination to become a Certified Forensic Computer Examiner.  Bd. Op. at 6-7.  Wybranowski refused to answer

any questions under oath concerning the cheating. R.R. at 279a-81a; see Bd. Op. at 6.

On October 28, 2014, a new collective bargaining agreement, effective January 1, 2015, eliminated the detective position Wybranowski held, forcing him to return to an officer position. S.R. at 10b, 118b-39b; R.R. at 275a. He was unhappy about this change. R.R. at 275a; Bd. Op. at 6.

On November 11, 2014, during a physical training exercise, Wybranowski alleged he fell and hurt his right knee. He suffered at least three previous injuries to the same knee, and he underwent three prior surgeries on his knee arising from those injuries. R.R. at 198a, 260a; Bd. Op. at 4. Although he claimed to suffer immediate pain upon falling on November 11, 2014, Wybranowski finished the training exercise that day and did not seek medical attention. R.R. at 212a, 221a, 244a.

The next day, November 12, 2014, Wybranowski reported the injury to the chief. On November 13, 2014, Wybranowski applied for workers' compensation benefits. The Township did not contest his eligibility for those benefits.

Wybranowski first sought treatment of his knee on November 17, 2014, when he reported to a hospital emergency room. He saw an orthopedist, Aaron P. Orlosky, D.O. (ER Doctor). Wybranowski complained of chronic aching in his right knee, along with instances of severe acute pain. After examining him,

4

ER Doctor released Wybranowski to return to work without restrictions. Bd. Op. at 4.

On November 26, 2014, the Township suspended Wybranowski for 10 days without pay for insubordination and unbecoming conduct in connection with the July to October 2014 incidents. He filed a grievance concerning the suspension. An arbitrator denied the grievance, finding Wybranowski lied under oath about concealing the forensic computer password. S.R. at 32b-33b (Wybranowski's testimony lacked credibility); see Bd. Op. at 5; S.R. at 158b (Wybranowski "lied" about not remembering the forensic computer password).

On December 2, 2014, Wybranowski suffered undisclosed injuries in a motor vehicle accident and required transport to the hospital by ambulance. He asserted a personal injury claim in connection with the motor vehicle accident. However, he did not inform the Township of the accident or his resulting injury, and when the Township later learned about the accident, he refused to provide any information concerning the medical treatment he received or the settlement of his personal injury claim. R.R. at 58a, 267a-71a, 292a; see Bd. Op. at 5.

On December 5, 2014, Wybranowski returned to ER Doctor, who diagnosed a meniscus tear of the right knee. Wybranowski did not tell ER Doctor about his recent motor vehicle accident. R.R. at 267a-269a, 292a. ER Doctor recommended that Wybranowski see an orthopedic surgeon for possible arthroscopic surgery.

In January 2015, Wybranowski consulted an orthopedic surgeon, Derrick J. Fluhme, M.D. (Surgeon). Surgeon performed arthroscopic surgery on Wybranowski's right knee in April 2015. Wybranowski did not return to work thereafter, claiming ongoing pain. He underwent physical therapy from late April through December 2015, with no significant improvement of his pain complaints.

While Wybranowski was off work post-surgery, the chief ordered him to provide regular updates on his condition, but Wybranowski failed to do so. S.R. at 158b. After not hearing from Wybranowski for three months, the chief called him in for an interview. Id. Following the interview, the chief suspended Wybranowski a second time, stating he caught Wybranowski in a lie during the interview. Id. The chief initially imposed a 90-day suspension, but the parties agreed to reduce it to 20 days. Id.

On December 15, 2015, Wybranowski applied for disability pension benefits under the Plan, based on his November 2014 knee injury. He supported his application with a written statement by Surgeon opining permanent and total disability. Surgeon later testified he had no objective medical findings to support that opinion; he based it solely on Wybranowski's subjective complaints of pain. Bd. Op. at 8.

In January 2016, the Township terminated Wybranowski's employment on the police force for cause, constituting a dishonorable discharge. An arbitrator subsequently upheld the discharge. S.R. at 141b-65b.

6

In February 2016, the Plan Administrator[4] denied Wybranowski's disability pension application. The Plan Administrator based the denial on Wybranowski's dishonorable discharge, inconsistent medical opinions from Surgeon, and the opinion of another physician, Stephen E. Kann, M.D. (IME Doctor), who performed an independent medical examination. IME Doctor opined that Wybranowski fully recovered from any work-related knee injury, that his remaining pain was due to arthritis caused by his prior injuries and surgeries, and that he would be capable of returning to full duty work if not for his discharge from employment. S.R. at 56b-58b, 61b-63b, 74b-80b; Bd. Op. at 4.

Wybranowski appealed the denial of disability pension benefits. In June 2016, the Board held a hearing on Wybranowski's appeal of the pension denial. The Board's solicitor served as its hearing officer, and the Township hired outside counsel to represent the police department in the appeal. Prior to the hearing, outside counsel retained a private investigator to conduct surveillance of Wybranowski's physical activities.[5] As part of his practice of documenting client approval of expenditures, outside counsel included the Board's solicitor in the list of persons receiving copies of an email to the private investigator setting forth the requested services and the approved financial parameters. See S.R. at 115b.

---

[4] The Plan provides for appointment of a Plan Administrator, or in the absence of such an appointment, administration by the Board. At all times relevant to this matter, the Township Manager served as the Plan Administrator.

[5] Surveillance photographs and videos showed Wybranowski performing physical activities he testified he could not do because of the pain in his knee. See Bd. Op., 9/27/16, at 6.

In September 2016, the Board issued a decision upholding the denial of disability pension benefits. The Board found Wybranowski's dishonorable discharge from the police force rendered him ineligible for disability pension benefits under the applicable statute and the Plan. The Board also found Wybranowski was not totally and permanently disabled. Bd. Op. at 7-8. The Board found IME Doctor's opinion credible on the disability issue and Surgeon and Wybranowski not credible. Bd. Op. at 7-9.

Wybranowski appealed the Board's decision to the trial court, which dismissed the appeal after a hearing. This appeal followed.

## II. Issues on Appeal
### A. Wybranowski's Arguments

On appeal,[6] Wybranowski argues that neither the applicable statute, 53 P.S. §767[7] (Act 600), nor the Plan requires an honorable discharge as a precondition to eligibility for disability pension benefits. Rather, he contends the disability itself triggers a vested pension right that a subsequent dishonorable discharge cannot impair.

Further, Wybranowski asserts the Township denied him due process in three ways. First, the inclusion of the Board's solicitor in the distribution of an

---

[6] This Court will affirm the Board's adjudication unless it finds the decision violated Wybranowski's constitutional rights or was not in accordance with law, or that any finding of fact by the Board necessary to support its adjudication lacked support by substantial evidence. 2 Pa. C.S. §754(b); Johnson v. Lansdale Borough, 146 A.3d 696 (Pa. 2016).

[7] Act of May 29, 1956, P.L. 1804, §1, as amended.

8

email retaining surveillance services created an impermissible commingling of prosecutorial and adjudicative functions that deprived Wybranowski of due process in the hearing before the Board. Second, two Board members improperly considered and gave some weight to the evidence offered by the private investigator at the hearing, further denying due process. Third, the Township's outside counsel failed to produce subpoenaed documents in advance of the hearing.

Wybranowski also contends the Board erred in its credibility determinations.

## B. Township's Arguments

In response, the Township disputes Wybranowski's construction of Act 600 and the Plan. The Township argues Act 600, the Plan, and the collective bargaining agreement unequivocally require an honorable discharge as a condition of eligibility for a disability pension.

The Township also challenges Wybranowski's due process argument. The Township asserts that inadvertently copying the hearing officer on a single email retaining investigation services cannot rise to the level of impermissible commingling of prosecutorial and adjudicative functions. The Township contends Wybranowski waived his other arguments concerning due process by failing to assert them before the Board and the trial court. In any event, the Township suggests the issues Wybranowski raises did not deprive him of due process.

The Township denies any error in the Board's credibility determinations. Moreover, the Township points out that determining witness credibility is the exclusive province of the fact-finder, in this case the Board. The

Township asserts there was substantial record evidence to support the credibility findings, thus placing them beyond the standard of review by either the trial court or this Court.

### III. Discussion
### A. Honorable Discharge Requirement

Wybranowski insists his dishonorable discharge from the police force did not disqualify him from receiving disability benefits. This argument lacks merit.

Act 600 provides for disability pensions to "such members of the police force as shall receive <u>honorable discharge</u> therefrom by reason of age and service, or disability." 53 P.S. §767(a)(2) (emphasis added). The Plan's preamble states the "Plan is maintained under and pursuant to the provisions of [Act 600]." R.R. at 3a. Notably, the collective bargaining agreement between the Township and the police union incorporates the Plan by reference and also requires the Township to maintain the Plan in compliance with Act 600. S.R. at 133b. Accordingly, pursuant to Act 600's provisions, the Plan necessarily applies only to members of the police force who receive honorable discharges.

Moreover, the Plan expressly provides that a participant whose employment ends before normal retirement age for any reason other than death or Total and Permanent Disability[8] may not receive any benefits under the Plan other

---

[8] The Plan defines Total and Permanent Disability as an impairment occurring in the line of duty, preventing performance of the usual and customary duties of employment, lasting at
**(Footnote continued on next page…)**

10

than a distribution of the Participant's accumulated contributions to the Plan. R.R. at 22a. Thus, a Township officer who incurs a discharge from employment for cause is not eligible for disability benefits under the Plan.

Wybranowski contends the language of Act 600 indicates a disability may itself be the basis of an honorable discharge. This argument misses the point. Wybranowski's discharge did not arise from his alleged disability, but from his misconduct. An arbitrator upheld that discharge. S.R. at 163b-64b. By terminating Wybranowski's employment for cause, the Township dishonorably discharged him from its police force. It is logically impossible for a police officer to receive both an honorable and a dishonorable discharge. It follows that an officer who receives a dishonorable discharge cannot also receive an honorable discharge based on an alleged disability.

Wybranowski's attempt to analogize the Plan's benefits to workers' compensation benefits is not well taken. The workers' compensation framework is a separate statute that creates a no-fault system. Act 600, by contrast, contemplates that police officers will earn pension benefits only through honorable discharge arising from age, service, or disability. There is no indication of a statutory intent to benefit officers who receive dishonorable discharges.

_____

**(continued…)**

least six months, and anticipated to continue for the remainder of the employee's life. Reproduced Record (R.R.) at 10a; see further discussion below.

11

Citing Shoemakersville Borough v. Shoemakersville Borough Police Association, 15 Pa. D. & C.5th 529 (C.P. Berks 2010), aff'd (Pa. Cmwlth., No. 1104 C.D. 2010, filed September 15, 2011), 2011 Pa. Commw. Unpub. LEXIS 786 (unreported), Wybranowski argues that termination of a police officer's employment does not eliminate his eligibility for disability pension benefits. Shoemakersville does not support this argument. The police officer in Shoemakersville did not receive a dishonorable discharge[9] for misconduct; rather, the borough disbanded its police force. Moreover, the officer was actually disabled due to a work injury. Neither circumstance is present here.

In addition, the outcome in Shoemakersville depended on the specific language of the borough's disability pension plan, which provided the only criterion for benefits was total disability due to an injury in the line of duty. Nothing in either the trial court's opinion or this Court's opinion on appeal suggests the plan in Shoemakersville included a provision, like that in the Plan here, limiting disability pension eligibility to officers receiving honorable discharges.

Borough of Mahanoy City v. Mahanoy City Police Department, 948 A.2d 239 (Pa. Cmwlth. 2008), which Wybranowski also cites as support, is likewise inapplicable. Notwithstanding Act 600, an employer and a union may bargain for removal of the statutory requirement of an honorable discharge as a precondition to eligibility for pension benefits. Id. The parties in Mahanoy City

---

[9] The borough did attempt to discharge the officer, but he prevailed in a grievance challenge, thus reducing the discharge to a suspension.

12

apparently did so, as the collective bargaining agreement did not contain an honorable discharge requirement.

Here, by contrast, the collective bargaining agreement expressly incorporates the provisions of the Plan and requires compliance with Act 600, see S.R. at 133b (collective bargaining agreement, Section XVII). Thus, the Plan and the collective bargaining agreement incorporate an honorable discharge requirement. Nothing in the record suggests the union and the Township bargained to remove that requirement. To the contrary, as discussed above, the Plan, incorporated by reference in the collective bargaining agreement, expressly renders ineligible any Participant whose employment ends before normal retirement age for any reason other than death or Total and Permanent Disability. R.R. at 22a. Therefore, Mahanoy City is inapposite.

Wybranowski argues, however, that he should still receive disability benefits because the Township did not discharge him until after he submitted his application for disability benefits. We discern no merit in this argument.

A Plan Participant who incurs a Total and Permanent Disability is entitled to disability pension benefits as of his Disability Date. R.R. at 20a. The Disability Date, a defined term in the Plan, is "the date when a Participant is determined by the Plan Administrator to be incapacitated due to Total and Permanent Disability, or the date when the Participant's Employment terminates due to such Total and Permanent Disability, if later." R.R. at 7a. The Plan imposes an express duty on the Plan Administrator to verify, "in its sole discretion," whether a participant has incurred a Total and Permanent Disability.

13

R.R. at 20a. To do so, the Plan Administrator "shall rely on the report of a physician acceptable to the Plan Administrator." Id. The Plan provides for approval or denial of a benefits application by the Plan Administrator "within thirty (30) days following receipt thereof or within such longer time as may be necessary under the circumstances." R.R. at 30a. Thus, the Plan itself contemplates an open-ended delay of 30 days or more between the time a claimant submits an application and the time the Plan Administrator acts on the application; i.e., between application date and the Disability Date as defined by the Plan. By defining the Disability Date as it does, the Plan necessarily allows for the possibility that a discharge for cause occurring during the pendency of a disability pension application may eliminate the applicant's eligibility for disability benefits.

Here, the Township discharged Wybranowski while his disability pension application was pending.[10] Further, the Plan Administrator, and then the Board, subsequently determined Wybranowski did not incur a Total and Permanent Disability. Therefore, he has no Disability Date, and his employment did not terminate due to Total and Permanent Disability. The timing of his disability pension application in relation to the date of his discharge does not support his eligibility for benefits.

Because Wybranowski received a dishonorable discharge, the Board and the trial court correctly found he was ineligible for a disability pension.

---

[10] Notably, however, the disciplinary process was underway long before Wybranowski applied for disability pension benefits, and indeed before he even alleged any injury occurred.

14

## B. Alleged Denial of Due Process

As described above, Wybranowski also argues the Board's finding of no disability was improper because the Township denied his due process rights in several ways, including transmittal by outside counsel to the Board's solicitor of the email retaining the private investigator, consideration by two Board members of the photographic surveillance evidence, and failure by the Township to comply with Wybranowski's prehearing subpoena. These arguments do not support reversal of the Board's decision.

## 1. Alleged Commingling of Functions

Procedural due process requires that a government agency rendering an adjudication must avoid commingling its prosecutorial and adjudicative functions. Lyness v. State Bd. of Med., 605 A.2d 1204 (Pa. 1992). However, not every tangential overlap in function constitutes a due process violation. There must be significant involvement of the adjudicator in the prosecutorial function in order to give rise to a due process violation. Id.

Here, Wybranowski's allegation of commingling rests on a single email from outside counsel to a private investigator, which counsel copied to the Board's solicitor. The email described the nature of the requested surveillance and the initial time and cost parameters the Township Manager approved. R.R. at 188a. Outside counsel submitted an affidavit explaining that he included the Board's solicitor on the email merely as part of his normal process of documenting client approval of costs.

15

Contact between outside counsel and a municipal board for such a purpose is not improper. See Piper Grp., Inc. v. Bedminster Twp. Bd. of Sup'rs (C.P. Bucks, No. 07-3457-29-5, filed August 27, 2009), 2009 Pa. Dist. & Cnty. Dec. LEXIS 171 (unreported), aff'd adopting op. of trial ct., 992 A.2d 224 (Pa. Cmwlth. 2009). Accord Kinavey v. W. Jefferson Hills Sch. Dist. (Pa. Cmwlth., No. 1081 C.D. 2015, filed June 15, 2016), 2016 Pa. Commw. Unpub. LEXIS 444 (unreported) (where solicitor acted as prosecutor for employee termination hearing and board hired outside counsel as hearing officer and advisor, communications between board and solicitor were permissible and did not constitute commingling of functions, as long as solicitor did not present evidence while also ruling on its admissibility). Nothing in the email or its transmittal to the Board's solicitor constituted impermissible commingling of prosecutorial and adjudicative functions.

### 2. Board's Consideration of Surveillance Evidence

Wybranowski next asserts that contrary to a statement in the Board's written decision, two of the four participating Board members did consider and give weight to the photographic surveillance evidence provided by the private investigator at the hearing. Each attending Board member received a verdict questionnaire at the conclusion of the hearing. Question 9 asked whether the responding Board member gave any weight to the photographic surveillance evidence. Two Board members answered "no," stating the photographs were not clear. Bd. Op. at 15, 24. A third member stated he gave the evidence "very little" weight. Bd. Op. at 19. The fourth member answered "yes." Bd. Op. at 29.

16

However, Wybranowski's point is not relevant or material. Copying the Board's solicitor on a single email retaining an investigator does not constitute commingling to such a degree that the Board could not thereafter consider any evidence obtained by that investigator. Wybranowski utterly fails to make the requisite logical and legal connection between the email and the investigator's evidence, either by analysis or citation to any authority.

Moreover, he points to no prejudice and offers no other legal basis to preclude the Board from considering the surveillance evidence procured by the private investigator. Accord Day v. Civil Serv. Comm'n, 948 A.2d 900 (Pa. Cmwlth. 2008) (absent prejudice arising from commission's review of materials not properly before commission, discharged police officer failed to show bias requiring new hearing).

### 3. Prehearing Subpoena

The Township correctly asserts that Wybranowski failed to raise before the trial court his argument concerning the Township's noncompliance with a prehearing subpoena. See S.R. at 169b-71b (appeal of Board's decision to trial court, issue not raised); R.R. at 485a-527a (trial court brief, issue not raised). Moreover, Wybranowski's statement of issues on appeal contains no mention of the subpoena issue, and his brief does not develop it. Accordingly, Wybranowski waived this argument. Pa. R.A.P. 2116(a) (no issue will be considered unless the statement of questions lists or reasonably suggests it); Kull v. Guisse, 81 A.3d 148 (Pa. Cmwlth. 2013) (same; citing Rule 2116(a)); Whitehall Manor, Inc. v. Planning Comm'n, 79 A.3d 720 (Pa. Cmwlth. 2013) (issue is deemed waived when party fails to explain or develop it in his brief).

17

Even in the absence of waiver, we would reject this argument. Wybranowski cites no authority requiring the Township to comply with a subpoena in connection with a hearing before the Board under the Local Agency Law, 2 Pa. C.S. §§551-555. Moreover, Wybranowski fails to point to any prejudice to him arising from the lack of prehearing disclosure of any documents. He does not offer any explanation of how or why the hearing outcome would have been different with prior disclosure; nor does he point to any specific evidence that would have made a difference to the outcome had it been disclosed earlier. In fact, the Township's adjudication notes that Wybranowski had every opportunity to avoid any potential prejudice by submitting additional evidence after the hearing to compensate for any late disclosure, but he chose not to do so. Bd. Op. at 9.

Wybranowski has failed to establish any violation of due process in the hearing or the prehearing procedure. Accordingly, we will not disturb the Board's finding of fact that Wybranowski is not permanently and totally disabled.

### C. Board's Findings on Absence of a Disability

Wybranowski also challenges the Board's credibility findings, which the trial court accepted, concerning his lack of any ongoing disability. We reject Wybranowski's credibility challenges.

For purposes of disability benefits under the Plan, a Total and Permanent Disability, a defined term in the Plan, is "a condition of physical or mental impairment due to which a participant is unable to perform the usual and customary duties of Employment, which condition continues for at least six (6)

18

months and which is reasonably expected to continue to be permanent for the remainder of the Participant's lifetime." R.R. at 10a. Under the Plan, a Total and Permanent Disability must result directly from and occur in the line of duty: "an Employee whose physical or mental impairment does not occur in the line of duty is not entitled to receive disability benefits under the Plan." Id.

The Plan affords the Plan Administrator sole discretion to determine whether a participant has incurred a Total and Permanent Disability. R.R. at 20a. In making that determination, the Plan Administrator has full power and authority "to determine all questions affecting the eligibility of any Employee to participate" in the Plan, "to prescribe any procedure to be followed by any Participant and/or other person in filing any application" for benefits under the Plan, and "to require from the Employer or any Participant such information as shall be necessary for the proper administration of the Plan." R.R. at 28a-29a. The Plan Administrator's determination concerning any issue under the Plan, if made in good faith and approved by the Board, is "final and conclusive." R.R. at 28a.

A benefits claimant who disagrees with the Plan Administrator's eligibility determination may seek review by the Board. The Board's decision is "final, conclusive and binding on all parties." R.R. at 31a. Notably, the Board is the fact-finder, and as such, the sole determiner of the witnesses' credibility. In re Nevling, 907 A.2d 672 (Pa. Cmwlth. 2006); In re Thompson, 896 A.2d 659 (Pa. Cmwlth. 2006). A court must accept the Board's credibility determinations as long as they are supported by substantial evidence. Johnson v. Lansdale Borough, 146 A.3d 696 (Pa. 2016) (applying the Local Agency Law, 2 Pa. C.S. §754(b)).

19

Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Oasis v. Zoning Hearing Bd., 94 A.3d 457 (Pa. Cmwlth. 2014). In determining whether substantial evidence supports a conclusion, a court must view the evidence in the light most favorable to the party who prevailed before the fact-finder. In re McGlynn, 974 A.2d 525 (Pa. Cmwlth. 2009).

Contrary to Wybranowski's suggestion, the record demonstrates there was substantial evidence to support the Board's determination that he was not credible, either concerning his alleged disability or generally. The Board cited ample supporting evidence in its written decision. The Board's findings concerning Wybranowski's lack of credibility included his unhappiness with the elimination of his detective position, his extensive computer research relating to knee injuries months before his alleged injury occurred, an arbitrator's finding that he lied under oath, and his refusal to produce medical documents or provide information concerning the motor vehicle accident that occurred between the date of his alleged knee injury and the date of the diagnosis of his meniscus tear.

Similarly, there was substantial evidence supporting the Board's findings concerning Surgeon's lack of credibility in opining on Wybranowski's alleged disability. Surgeon's diagnosis concerning Wybranowski's right knee was primarily arthritis, exacerbated by the November 14, 2014 event. R.R. at 174a. As set forth above, Surgeon acknowledged he found no objective medical evidence of disability; he relied solely on Wybranowski's subjective pain complaints in stating

20

he was disabled. Bd. Op. at 8. Further, Surgeon conceded, "I do not know the true definition of total/permanent disability as a police officer." R.R. at 174a. Surgeon also opined that Wybranowski's work restrictions could prove to be temporary. Id. This evidence amply undermined Surgeon's credibility in opining that Wybranowski was totally and permanently disabled. Thus, the trial court was correct in finding there was substantial support for the Board's rejection of Surgeon's opinion as inconsistent.

In addition, the Plan expressly authorizes the Plan Administrator "to prescribe any procedure to be followed by any Participant and/or other person in filing any application or Election," as well as "to require from the Employer or any Participant such information as shall be necessary for the proper administration of the Plan." R.R. at 28a-29a. Here, the Plan Administrator required Wybranowski to provide information concerning his injury in an automobile accident in December 2014. R.R. at 55a, 62a. Wybranowski refused to provide that information. R.R. at 58a-59a, 62a-63a. Thus, he deprived the Plan Administrator of information necessary for the proper administration of the Plan. The Plan Administrator relied in part on the absence of requested information in denying Wybranowski's application for disability benefits. R.R. at 65a (Plan Administrator "believes that the information requested, if provided would most likely have further supported his conclusion" denying disability benefits).

Wybranowski argued the information was not relevant, but a review of the chronology of events compels the opposite conclusion. Although Wybranowski alleged he hurt his knee during work training in November 2014, he

21

waited several days before seeking medical treatment. When he did seek treatment, ER Doctor examined him and released him to work without restrictions. Bd. Op. at 4. Weeks later, Wybranowski sustained an undisclosed injury in a motor vehicle accident. Three days after the accident, he returned to ER Doctor, not informing him of the accident. R.R. at 267a-69a, 292a. Only then did ER Doctor diagnose the torn meniscus. Id. In this context, the nature of Wybranowski's injury in the motor vehicle accident has undeniable relevance to the question of whether the alleged knee injury occurred in the line of duty, as well as whether any alleged disability arose from the alleged work injury or from the subsequent motor vehicle accident. In light of Wybranowski's unjustified refusal to disclose any information about the accident, the Plan Administrator and the Board properly denied disability benefits.

Notably, in finding Wybranowski's evidence in his termination grievance lacked credibility, Arbitrator Ronald F. Talarico, Esquire relied in part on the same evidence at issue here. He pointed out the Board's observations that both Surgeon and IME Doctor were unable to find any objective medical evidence to support Wybranowski's subjective complaints of pain, and that Wybranowski failed to disclose his automobile accident and the resulting injury. He described these facts as supporting "pertinent and significant findings of dishonesty" on Wybranowski's part. S.R. at 159b. At a minimum, these facts constituted substantial evidence in support of the Board's credibility findings.

Thus, the trial court correctly refused to disturb the Board's credibility findings. Wybranowski does not and cannot dispute that Total and Permanent

Disability is a necessary precondition to eligibility for disability pension benefits under the Plan. He has failed to demonstrate any basis to disturb the Board's findings of fact on appeal.

## IV. Conclusion

Based on the foregoing discussion, we affirm the trial court's dismissal of Wybranowski's appeal from the Board's ruling denying disability pension benefits.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Wybranowski, : 
 Appellant : 
 : No. 90 C.D. 2018
v. : 
 : 
North Strabane Township : 

# **O R D E R**

**AND NOW**, this 9th day of November, 2018, the order of the Court of Common Pleas of Washington County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge